## Stouffer *against* Latshaw.

To constitute a duresse at law, the arrest must have been originally illegal, or made so by a subsequent abuse of it.

The legality or illegality of an arrest is determinable by the laws of the state wherein it is made ; and in the absence of proof to the contrary, an arrest upon legal process in another state will be taken to be justifiable.

To submit a fact, destitute of evidence, to the determination of a jury, as one that may nevertheless be found, is an encouragement to err, which cannot be too closely observed or unsparingly corrected.

ERROR to the common pleas of *Lancaster* county.

This was an action in six single bills by John Stouffer and Jacob Stouffer against John Latshaw. The pleas were, *payment with leave*, &c., *duresse of imprisonment*, and *non est factum :* upon which issues were joined.

In 1826, the plaintiffs in this action brought a suit against the defendant, in the common pleas of Lancaster county, Pennsylvania : in 1827, while that suit was yet pending, the plaintiffs sued out a *capias* in Baltimore, Maryland, against the defendant, upon which he was arrested and gave bail to the sheriff: the next day after the arrest, the defendant gave to the plaintiffs, in satisfaction of the claim for which the *capias* issued, the six notes on which this suit is brought. There was no evidence given on the trial of the cause, of the nature of the bail given by the defendant to the sheriff of Baltimore, nor was there any evidence of what the law of Maryland was, with regard to the validity of an arrest for a cause of action for which suit was pending in another state. The following points were put by the plaintiffs to the court :

1. That the pendency of a suit in another state or a foreign court by the same plaintiff, against the same defendant, for the same cause of action, is no stay or bar to a new suit brought in another state in a court of competent jurisdiction ; the " *exceptio rei judicatæ*" applying only to final or definitive sentences abroad upon the merits of the case. And, therefore, the plaintiffs, John and Jacob Stouffer, had an undoubted right, notwithstanding the pendency of the suit in the district court for the city and county of Lancaster to December term 1826, No. 36, to commence another suit against John Latshaw, the defendant, in the " Baltimore county court."

2. That as the plaintiffs had a right, notwithstanding the pendency of the suit to December term 1826, No. 36, to institute another suit in the county court of Baltimore, any arrest under process issuing from that court was legal, and not tortious and unlawful.

3. That to avoid a bond or contract for duresse of imprisonment, it

should clearly appear that it was executed while the party was under arrest, and that the arrest was illegal and tortious, and made with a view and for the purpose of obtaining from the defendant the bond or contract in question ; and that as the process under which John Latshaw was arrested in Baltimore was issued by a court of competent jurisdiction, and was legal, he could not avoid the notes upon which these suits are brought, even if they had been executed while he was in the custody of the sheriff.

4. That if the jury believe that John Latshaw, the defendant, executed the single bills upon which these suits are founded the day after he had given bail and after he had been discharged by the sheriff, he could not avoid them under an allegation of " duresse of imprisonment," even if the arrest had been illegal ; and *a fortiori* he cannot, as the process issued against him emanated from a court of competent jurisdiction, and was legal.

5. That in the suit brought to December term 1826, No. 36, in the district court for the city and county of Lancaster, the defendant, John Latshaw, never having entered special bail, was not *rectus in curia*, and therefore the pendency of that suit would be no bar to another in a different court of competent jurisdiction for the same cause of action.

Defendant's points.

1. That it is a well settled principle of law, that a man cannot bring a second action for the same cause, for which he has a prior action pending.

2. That the suing out of a second writ, when the prior suit is pending, for the same cause of action, is tortious and illegal, and renders the second or subsequent writ bad *ab initio*.

3. That if the jury believe the six several notes sought to be recovered in these suits grew out of the illegal and tortious arrest of the defendant, on the second suit instituted in the city of Baltimore, pending the prior suit, for the same cause of action, in the county of Lancaster, and that the defendant to procure his discharge executed the said notes to the plaintiffs; that the illegal arrest, so made, vitiates and renders void their execution, and no recovery can be had upon them.

4. That the pendency of a suit in Pennsylvania renders the issuing of a second writ for the same cause of action in a sister state tortious and illegal, and that the subsequent discontinuance of the first suit cannot make the institution of the second regular and legal; if, therefore, the jury believe that the suit in Baltimore was for the same cause of action, for which a prior suit had been instituted in Pennsylvania, then the plaintiff cannot recover, and the verdicts should be for the defendant.

5. That it is clear law, that every restraint of the liberty of a freeman, whether in prison or at large, is an imprisonment, and if he enters into a note or notes during such restraint, he may avoid the same for duresse of imprisonment.

[Stouffer v. Latshaw.]

6. Also, in equity, if a man by compulsion enters into a note or notes, though the terror and force are not sufficient to make it duresse at common law, yet it may be relieved against; and if the jury believe that the defendant, to procure his discharge from an illegal arrest, was compelled to execute the notes sought to be recovered in these suits, the verdicts should be in favour of the defendant.

The court instructed the jury, in substance, that to constitute duresse at law, the arrest must have been originally illegal or have become so by subsequent abuse of it; and in the absence of proof the arrest must be taken to have been legal; and that it was a matter of fact for the jury to determine, whether the laws of Maryland were such as to make the arrest illegal. The court were also of opinion, that if a man execute notes by compulsion, though the terror and force were not such as to make it duresse at common law, in equity he might defend in an action on the notes.

*Montgomery* and *Norris*, for plaintiffs in error.
*Jenkins* and *Hopkins*, for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—It was accurately charged, that to constitute duresse at law, the arrest must have been originally illegal, or have become so by subsequent abuse of it. It was accurately charged too, that in the absence of proof to the contrary, the arrest must be taken to have been justifiable under the laws of Maryland, by which its legality is determinable; as a second arrest during the pendency of an action in a foreign country for the same cause is justifiable by the common law, which is the basis of the jurisprudence of that state. Yet notwithstanding the conceded absence of proof to rebut the presumption in favour of the arrest, its legality was submitted to the jury as an open question. It is doubtless the province of the jury to determine the effect of the evidence, but it is the province of the court to determine its competency; and the right to determine what is evidence and what is not, necessarily includes a right to determine whether there is *any* evidence to the point proposed. Nor is it an invasion of the prerogative of the jury to instruct them, in a proper case, that there are legal presumptions of fact which it is their duty to draw. By the pleadings, all that is necessary to constitute duresse was a part of the case which the defendant had taken upon himself to prove; and, failing to produce his proof, the fact was to be taken as against him; but, instead of being instructed to that effect, the jury were directed to consider the matter at large, which had a direct tendency to mislead them as to the *onus probandi* and the legal result of the proof. To submit a fact destitute of evidence, as one that may nevertheless be found, is an encouragement to err which cannot be too closely observed, or unsparingly corrected.

Of oppression by an excessive use of the process, there was no room for a pretext, in the evidence returned on the commissions; nor does

[Stouffer v. Latshaw.]

the cause seem to have been put on that ground. But though actual duresse was out of the question, it was put to the jury to say, whether there was not evidence of such constraint, though less than actual duresse, as would induce a chancellor to order the securities to be delivered up: at least such I take to be the drift of the direction. The defendant's counsel prayed an instruction, " that, *in equity*, if a man enter into a note, though the terror and force are not sufficient to make it duresse at the common law, yet it may be *relieved against;* and if the jury believe that the defendant, to procure his discharge from *illegal* arrest, was compelled to execute the notes sought to be recovered, the verdict should be in favour of the defendant." To this jumble of legal, and imaginary equitable duress, the court responded in the affirmative; saying, " a man ought to be relieved from the payment of any obligation given by him under the circumstances stated in the proposition; that is, if it appear clearly that *the arrest was illegal,* and that to procure his discharge from such illegal arrest he was *compelled* to give the obligation in question." Now, if the arrest were illegal and used to extort the notes in question, there could not be a more decisive case of duresse at the common law; and it would be idle to talk of a less degree of constraint as a ground of relief applicable to such a case in equity. The design of the prayer was palpably to obtain the sanction of the court to the abstract principle, that there may be relief in equity for a less degree of constraint than is necessary to constitute duresse at law; and though the court lent its sanction on the inconsistent condition that the arrest be illegal and for purposes of extortion, yet the qualification being repugnant to the principle, must be rejected. If the direction meant not that there is a species of milder duresse, which may be the subject of equitable cognizance exclusively, it meant nothing; and in any aspect it had an irresistible tendency to confuse and mislead. The authority relied upon in the argument is the case of Nichols *v.* Nichols, 1 *Atk.* 409, in which it is given, as the substance of the decree, that " though a man is arrested by due process of law, if a wrong use is made of it against the person under such arrest, by obliging him to execute a conveyance which was not under consideration before, equity will construe it a duresse, and relieve against a conveyance executed under such circumstances." Is not that also a case of duresse by the common law? The spontaneous act of a man in arrest by due course of law, though for no actual cause of action, may not be avoided for duresse, because, as is said in 1 *Leon.* 61, an action on the case lies for the malice; but, as it is laid down in 1 *Roll. Abr. B.* 1; " if a man lawfully in prison make an obligation *against his will and consent,* he may avoid it for duresse." And the distinction rests on a cardinal principle of the law, which declares an arrest on due process not to be a trespass however malicious it be, but admits that it may become so by a subsequent abuse of the authority. To make " a wrong use of an arrest," therefore, by obliging the party arrested "to execute a conveyance which was not under

[Stouffer v. Latshaw.]

consideration before," is to make the arrest illegal from the beginning; and the wonder is, that equitable relief should have been given in Nichols *v.* Nichols, for what was clear duresse and remediable at the common law. It was said by Lord Hardwicke in Roy *v.* The Duke of Buckingham, 2 *Atk.* 193, that duresse is not remediable in equity, because, as he remarked, if there were any illegal advantage taken of the obligor when he was in custody, he might be relieved at law, and there was no occasion for a suit in equity. It is certainly not an independent ground to go into that court, though there may be cases where it is necessary to determine the question of its existence incidentally on an objection to a deed ; but the expression of Lord Hardwicke undoubtedly indicates no opinion favourable to the doctrine of equitable duresse. I take it, that nothing of the sort would authorise a decree to have the security delivered up, or any other that would deprive the party of an advantage to be had from it at law. In the report of Nichols *v.* Nichols, if such it may be called, neither the circumstances of the case nor the grounds of the decree are stated, and we are left in the dark as to the nature and extent of the relief. That equity would refuse to execute a contract procured by a less degree of constraint than is necessary to duresse, may readily be conceived ; but that it would interpose to destroy the security at law, especially if it were, as here, for a *bona fide* duty, is a proposition that wants the confirmation of authority. No such principle was established in The Attorney-General *v.* Sothon, 2 *Vern.* 497. That was the case of a bond given in the prerogative court under very peculiar circumstances. An application of the obligor for administration of his uncle's estate, was resisted by one named as executor in a will not to be found, but alleged to contain certain charitable bequests. The nephew, being told by the prerogative judge that he should have the administration, but it was expected of him that he would secure the charities, executed the bond in question, and thereupon had sentence pronounced for him, which was affirmed at the delegates. On cross bills filed, the one to have the benefit of the bond, and the other to have it delivered up, lord keeper Cowper said, that a bond procured through force or terror, "though not so as to make it *per dures,*" ought to be set aside, or at least not carried into execution ; and that though a judge may fairly mediate an accommodation, yet that to put terms on pronouncing judgment is contrary to *magna charta.* In conclusion it is said, "there being no proofs in the cause that there *was* such a will, and it likewise appearing by the proofs that the testator had afterwards *changed his mind,* thereupon the lord keeper declared he was not satisfied to decree performance of the bond, nor to set it aside, and dismissed both bills." Now, though he seems to have thought that a bond thus procured might be set aside, he refused to do so in the most favourable state of the facts for the principle of which the case was susceptible ; and had the proofs shown the existence of the will without any change of testamentary purpose, there is little doubt, from what was done under circum-

II.——W

stances less favourable to the obligee, that the bond would have been decreed, though obtained by compulsion; and even as it was, the lord keeper did much the same, by leaving the obligee to his action at law, against which there could be no defence. Hinton *v*. Hinton, 2 *Ves*. 65, was the case of a bill for specific performance; and even there, the fact that the agreement was made in jail, was not deemed an objection to the extraordinary interposition of the court; and in Wilkinson *v*. Spafford, 1 *Ves*. *Jun*. 33, the compromise objected to for having been made in prison, was introduced incidentally as part of the defence. In no case have I found an authority for the notion that there is a sort of equitable duresse which may be made the foundation of an injunction against proceeding at law. Perhaps the actual restraint of a party's liberty may be a circumstance, in connection with others, to raise an imputation of fraud, which however is a distinct ground for setting a contract aside; but even that has no place where the imputation is rebutted by the existence of a *bona fide* debt or duty. What then is the case here? The plaintiff is demanding the fruit of his securities in actions at law, without needing or desiring assistance from the equitable powers of the courts; and he is not to be told of an equitable duresse to cut him out of a debt whose existence and fairness are not disputed. But there was not a particle of evidence that any constraint was put upon the defendant; and in that view, also, the cause was erroneously put to the jury.

Judgment reversed, and a *venire de novo* awarded.