The opinion of the Court was delivered by—
Gibson, C.'J.
We are called upon, not to withhold our assistance from the execution of an agreement, but to cancel a contract executed; and it is to be noticed that there is a material difference between circumstances which require a chancellor to forbear, and those which require him to act. On a question of specific performance he may "choose to be silent; and his action, being of grace and not of right, is to be directed by a sound though legal discretion. But circumstances proper for rescisión, involving, as they do, the control of a legal right, are necessarily of a more positive and definite cast. The consequence of the distinction is, that though equity will refuse to interfere for purposes of execu tion wherever it would revoke, it may refuse to revoke where it would decline to execute. A chancellor lends not assistance to an unconscionable bargain, accompanied with circumstances of suspicion though not positively unfair, as in Campbel v. Spencer, (2 Binney, 129); but hardship or suspicion of unfairness is certainly not ground of recision. Had the title been conveyed in the case quoted, no interference of the jury or the court would have prevented a recovery. These are elementary principles about ' which there is no dispute. Now the grounds on which equity interferes for rescisión, are distinctly marked, and every case proper for this branch of its jurisdiction, is reducible to a particular head. They are principally fraud, mistake, turpitude of consideration, and circumstances entitling to relief on the principle of quia timet. The case at bar, cannot, consistently with its nature, be brought under either of the two last; and as there is small allegation of mistake, and still less proof of it, the contract can be successfully assailed, if at all, but for fraud proved or inferrible from want of consideration and the relation in which the parlies stood.
I have searched the proofs, without success, for anything like a suggestion of falsehood or suppression of truth. Miss Dela mater had long attained the age of discretion, was conscious that the title was vested in her, and was aware that she could not be divested of it without her consent. In executing the act of transfer, she thought she was but carrying out the plan of her father; and there is nothing to show that her belief, whether well or ill founded, was generated by the arguments or suggestions of the donees.; neither was she moved towards the consummation of her purpose by threats or intimidation. Mrs. Dunton had declared that she would not again enter the house if her expectations were disappointed ; but, surely such a declaration is not an engine of duress, proper for the consideration of a chancellor. It is certainly not a proof of legal duress; and it has been determined in Stouffer v. Latshaw, (2 Watts, 165,) that there is *375 no such thing as equitable duress. The only inducement to the act not made good to the letter, is Mrs. Dunton’s promise to have the matter amicably arranged, if found not to be right. Mr. Pike supposes this to have been an engagement to restore, and Ann Kremer, the other witness, speaks of it very indistinctly. It seems to have meant no more than the parties were expected to deal with each other on honour; and that is certainly not a cause for relief. In dealing with a person of weak intellects, such a promise might be a circumstantial proof of imposition ; but Miss Delamater, is not alleged to have been such. We discern nothing in her conduct evincive of it.' She appears to have acted on a settled conviction that her father’s partial intestacy was the effect of accident, and that she was required by duty to repair it.
If her belief in this particular were correct, and it has not been shown that it was not, the moral obligation cast upon her by the discovery of her father’s intent, would be a consideration to support even an executory agreement. But to a contract executed and requiring not the interposition of a chancellor, a consideration is unnecessary. A gift cahnot be retracted; and even a voluntary specialty may be enforced at law without hindrance from equity, which does not recognise the want of an actual consideration as a ground of injunction. But, without even' the pretence of a consideration, the executed transfer was an irrevocable gift of the stock, though the donor may have been mistaken in the existence of some fact which was the collateral inducement to the act.
Did the parties stand in a relation to forbid the transaction? The residuary bequest of “ furniture, bedding, carpets, china, kitchen furniture, looking-glasses, crockery, &c.,” certainly did not carry the stock; nor was it embraced by the supplementary description of “ money in bank,” or “ all claims and demands of whatever nature.” These, as justly remarked by the auditor, are not such as, in the ordinary sense of t he words, denote bank stock. The subject of the contest., then, did not pass by the will, and the parties stood, as regards it, in no fiduciary relation whatever. What then was there to prevent them from dealing for it on a footing of ordinary equality? A trustee has been suffered to acquire even the trust fund, the cestui que. trust acting with full knowledge of the circumstances and having the management of the sale. The rule was perhaps never carried so far as to prevent the parties from dealing with each other in the attitude of stfangers, and at arms length; and it seems to be mitigated by recent decisions. In the English chancery it seems to be no more than this. Where the parties stood in a very confidential relation, •such as guardian and ward, attorney and client, or cestui que trust and trustee, the party seeking to set aside the deed shall not be called on to show direct fraud; yet the burthen of proving that advantage was taken of the confidence incident to the relation will nevertheless rest on him, subject, however, to rebuttal by proof from the other *376 side, that the dealing was, in fact, guarded as between strangers, and without advantage taken of influence or superior knowledge. The subject is, to say the least, eloquently discussed in Hunter v. Atkins, (1 Cooper's Rep. of Ld. Brougham’s Decisions, 464,) to which those who choose to pursue it further, are referred. But it is proper to remark that the relation of trustee, including that of guardian and executor, is the one in respect to which the Court is the least vigilant, being most especially awake to the transactions of an attorney with his client. Now in reference tó the transaction here, the relation could not be put off, for it never existed; nor did the parties treat under an impression that the stock was involved in it. Miss Delamater knew that it was not peculiarly in the control of Mr. Dunton and his wife, and that, as to ownership and every thing besides, she was on a footing with them. She was in her thirtieth year, and she seems to have been every way competent to deal with them in this or any other transaction. But what was her relation to them even in respect to the trusts in the will? She was joined with them in the execution of it; and though she had not acted, yet being officially and intellectually competent, she was their equal and at liberty to assume the active duties of the office when she might please to do so. She was exactly informed of her position; no circumvention was practised on her, and though she was strongly — perhaps indelicately — pressed by considerations that might operate on the sensibilities of a sister, these are referrible to the relation of blood and not of office. Even as a relative she was put on her guard by her kinsman, Mr. Pike; and the act of transfer thus performed under a sense of moral obligation — possibly a mistaken one — by a person not disqualified by imposition or any particular relation, is conclusive.
Report and decree affirmed.