95      447
33 SC ¹549

# Campbell's Executrix versus Patterson.

1. What is not sufficient evidence to move a chancellor to decree a rescission of a contract on the ground of fraud.

2. Where the answer to a bill in equity is responsive to the bill and denying all its material averments, the duty is imposed on the plaintiff of sustaining his bill by the evidence of one witness beside himself, or by circumstances equivalent to a second witness.

3. Where one, though not nominally a party to a bill in equity, is a party to the contract sought to be avoided thereby and files a deed to take effect on its rescission, he is not a disinterested witness.

4. Before the passage of the act making parties competent witnesses, the evidence of one disinterested witness was not sufficient to authorize a decree against the answer of a party. The spirit of the rule still remains, requiring proof of the facts charged and denied, to be clear and satisfactory by the undoubted evidence of two witnesses or one witness and the equivalent of a second.

5. Per TRUNKEY, J.—It would be a dangerous precedent to rule, that upon the sole testimony of the dissatisfied parties to an executed contract, which had not turned out so well as they had expected, they may of right demand its rescission by a chancellor.

[Campbell *v.* Patterson.]

October 14th 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   GREEN, J., absent.

Appeal from the Court of Common Pleas, No. 1, of *Allegheny county* : Of October and November Term 1880, No. 235.   In Equity.

Bill in equity filed by T. H. Baird Patterson against William H. Campbell.

The following is an abstract of the bill : That on or about July 1st 1872, the defendant, William H. Campbell caused to be subdivided and laid out into a plan of lots a tract of land, in Allegheny county, near Walls Station, on the Pennsylvania Railroad, being part of a larger tract conveyed to defendant, &c., and reciting the title of defendant thereto, and that a copy of the plan so · laid out is attached to the bill.   That on or about August 1st 1872, the defendant executed and delivered his deed to plaintiff and one Joseph P. Reed, at that time a minor, for a certain part of said tract of land, describing it by courses and distances, containing five acres and 132 perches, with the right of way over a private road or street 40 feet wide, from the township road along outside the first described four lines of this · piece of ground, and being section " C" in the plan hereto attached, for a price of $3536.87$\frac{1}{2}$ ; that such plan was not then of record, but by the terms of said deed to be thereafter recorded; that said plan at the time of making said deed was given by defendant to plaintiff, and represented as showing the streets of said plan to which•the plaintiff would be entitled as appurtenant to said lot ; that such representations were inducements to the plaintiff to purchase said lot.   That at the time of said purchase the tract sold to plaintiff was shown by defendant to plaintiff on said plan, which plan showed certain roads, streets, &c., over, along and adjacent to said tract; that said streets increased the value of said tract, and were inducements to plaintiff to purchase, &c.   That notes were given by plaintiff and his co-purchaser for the purchase-money, and a mortgage to secure the same.   That the defendant has since, though often requested, refused to put said plan on record ; that he has sold property included in said plan, and adjoining tract sold to plaintiff, to John H. Hampton et al., upon an entirely different plan, which last-mentioned plan is inconsistent and conflicts with the plan by which the plaintiff bought, and seems to close up and destroy streets laid out on plan given to plaintiff.   That the defendant has issued a scire facias on the mortgage given for the purchase-money, and has brought suit on two of the notes given therefor.   That plaintiff believes that fraud and deceit were practised upon him in said sale, and has expressed his desire to rescind the contract, and now offers to rescind the same, and tenders a reconveyance of said property on repayment of the purchase-money.

He prays : First, that the court may compel the defendant to record the plan by which plaintiff purchased ; second that defendant

[Campbell v. Patterson.]

be restrained from proceeding further in the suits on the notes and mortgage until said plan is acknowledged and recorded ; third, that if the defendant is unable to complete and place upon record said plan, that the contract be rescinded, &c.

The defendant's answer in brief admits the sale of the tract described to the plaintiff and Joseph P. Reed ; sets forth that defendant never made any definite plan of lots, but that some time in 1872 defendant made a rough draft of about 80 acres more for his own convenience than any other purpose and to show the location of the land, &c., and said draft showed the outside lines of the 80 acres which he wished to sell in tracts to suit purchasers, and two or three tracts of about five acres each, one of them the tract sold to plaintiff. There was no street marked on said draft, except the right of way afterwards granted by the deed to plaintiff. That some time before the sale to plaintiff, defendant made a copy of about 60 acres of said draft, the only difference between the two being that the latter excluded about 20 acres at the extreme end of said 80 acres, no part of which was subdivided or sold. That defendant showed plaintiff this sketch of the 60 acres before the sale, explaining to him that he could not make any definite plan of the land, as the tracts sold would not be uniform in size ; that the lines of adjoining tracts would have to conform to each sale, as purchasers might want smaller or larger tracts : that when the whole of said 80 acres was sold, defendant would be able and intended to give a letter to each piece sold, and make a general plan of the tracts so sold. That defendant never promised to record any plan except such an one as explained, and in accordance with this understanding the tract sold to plaintiff was not lettered when the deed was delivered, but left blank until further sales should be made ; that it is still his purpose to put such plan on record when the whole of the 80 acres is sold. That shortly afterwards, the panic put a stop to defendant's sales ; defendant never exhibited or gave to plaintiff a plan of lots of which the plan annexed to the bill is alleged to be a copy ; that he never showed him any plan except the rough draft before mentioned ; that when the deed was delivered plaintiff asked defendant to give him the sketch defendant had shown him, and defendant gave the same to plaintiff. That the exhibit attached to the bill is not a true copy of the sketch shown by defendant to plaintiff ; there were no streets or rights of way marked on said sketch, except the right of way to the township road ; that all the roads, streets and rights of way on the plan attached to the bill, indicated by black lines, have been put there since said sketch passed out of defendant's possession, and have been put there without defendant's knowledge or authority ; that the tract sold to plaintiff was not " section C" in the plan attached to the bill, but was section C in a plan to be hereafter recorded when the whole of the 80 acres had been sold. That about six months after the deed was delivered plaintiff

14 Norris—29

[Campbell *v.* Patterson.]

asked defendant to give him a letter for his tract as he wished to place his deed upon record, and as the defendant had then sold several tracts of the land he was able to give him, and did give him, the letter C for his tract. Defendant denies that any plan of which the exhibit attached to the bill is alleged to be a copy was to be recorded by the terms of the deed, or any plan except as heretofore explained; denies that he represented the sketch shown plaintiff, or any plan whatever as showing streets plaintiff would be entitled to: denies that he represented that there would be any streets or rights of way as appurtenant to the lot sold, or by virtue of any plan to be recorded, except the right of way to the township road granted by the deed: denies that plaintiff was induced to make said purchase by any such representations made by defendant; admits sales of adjoining land to Hampton et al., but denies that they were made by a plan, or that any rights were thereby granted inconsistent with the rights heretofore granted to plaintiff; denies that plaintiff ever expressed any desire to rescind until after he had been sued by defendant on mortgage and notes for purchase-money.

The court appointed C. Hasbrouck, Esq., as master. The complainant produced before the master the plan under which he claimed the streets and rights of way set forth in his bill. This plan showed that all the streets so claimed were bounded by lead-pencil lines; that no width was given to them, nor were they marked as streets or designated in any manner whatever on said plan; that they had no courses or distances as had the admitted boundary lines made by Campbell; that the ink lines closed up all of the streets except the right of way described in the deed, and the contents of the tracts marked off on said plan ran up to the ink-boundary lines and left no room for streets. It showed further that the lead-pencil lines forming the boundaries of the streets claimed, ran on either side of and followed the ink lines dividing the several tracts on the plan.

The defendant, William H. Campbell, died before the plaintiff's evidence had closed. The defence rested on his answer and the written contract of the parties.

The only testimony that was offered in support of the bill, was that of Patterson, the plaintiff, and Reed, his co-purchaser and co-grantee. The master, while holding that the answer fully balanced the testimony of the plaintiff, treated Reed as a disinterested witness and was of opinion that his evidence was sufficient to sustain the allegations of the bill and to overcome the answer and the deed. Reed was not a party to the bill, but he had filed with the master his deed to Campbell for his (Reed's) undivided interest in the land, to take effect upon the rescission of the contract under the terms of the bill.

It appeared by the plaintiff's testimony that he had paid Reed's share of the hand-money and Reed's notes as they fell due, as well

[Campbell *v.* Patterson.]

as the taxes on the land. Reed himself, being called by the defendant for that purpose, testified that Patterson, the plaintiff, had brought him a paper to sign; that this paper related to the assumption of Reed's notes by Patterson and had some relation to the land, but the witness did not know whether he had assigned his interest to Patterson or not. Reed signed the paper and testified that Patterson had kept it and that he had never seen it since. Patterson on being ruled by the defendant to produce the paper testified to by Reed, denied under oath that he had ever had such a paper, and denied all knowledge of it.

The master, being of opinion that the averments of the bill were sustained by the evidence of Reed, a disinterested witness, found the facts in favor of the plaintiff, and recommended a decree rescinding the contract, etc., etc. Exceptions having been filed by the defendant to the master's findings, upon argument, the Court of Common Pleas, No. 1, overruled the same and confirmed the master's report. No opinion was filed. Whereupon an appeal was taken by Margaretta Campbell, the executrix of William Campbell, deceased.

*Bruce & Negley* and *J. M. Acheson*, for appellant.—We submit that the master was wholly wrong, in allowing the testimony of the complainant and his co-purchaser Reed to overcome the defendant's answer. This answer being responsive to the bill, and denying all its allegations, its effect could only be overcome by evidence other than that of the plaintiff himself. The application of this rule is especially important in this case, where the bill is mainly supported by the plaintiff's own testimony, while death has prevented the defendant from testifying in his own behalf. The effect of the answer being to nullify the plaintiff's individual testimony (Daniel's Ch. Pr. 840 and notes), the duty was imposed on him of sustaining the allegations of his bill by evidence *aliunde*. The only other evidence that the plaintiff had, was that of his co-purchaser Reed, and we submit that his testimony was not sufficient to overcome the defendant's answer with its corroborating circumstances, and that the master erred in giving it such effect. The master treated Reed as a disinterested witness, and gave full force to his evidence as such, allowing it to prevail and bear down the defendant's answer. But why is Reed less interested than the complainant? He is practically a party to the bill, although not technically so. He was a co-purchaser with the complainant, gave his individual notes, and joined with the complainant in the mortgage. He defended the suits on his notes, and put in his own defence to the suit on the mortgage.

It was certainly error to allow the written and executed contract of the parties to be overthown by the parol testimony of the only persons who could be benefited by the avoidance of such contract.

*W. S. Wilson* and *John S. Ferguson*, for appellees.—The complainant did not attempt to strike down the deed by a parol agreement. In the deed itself Campbell had declared that the ground which he described and conveyed was " Section C, in a plan of sub-division of part of said larger tract, to be hereafter recorded." By a fair interpretation of his language that plan then had an existence and he had undertaken to record it. Our evidence simply identified the plan. It explained the deed. It was admissible upon precisely the same principle that would admit parol evidence to identify the corner at which the description of the land began. It would be impossible to so draft a deed as to make it effective without the aid of such parol evidence.

When the plan was identified it became a part of the deed, as showing what streets or ways were appurtenant to the land conveyed, as much as if the plan had been inserted in the deed : Borough of Birmingham *v.* Anderson, 12 Wright 253 ; Trutt *v.* Spotts, 6 Norris 339. To sustain the plan produced by the complainant we relied not merely upon the testimony of Reed and Patterson, but also upon a number of corroborating circumstances.

The deed itself corroborated us. It admitted the existence of a plan, and from that admission we were fairly entitled to infer that that plan had some bearing upon the subject-matter of the grant.

We were corroborated by the inference resulting from the fact that although Campbell denied that our plan was the one given us by him he claimed by his answer to have a draft, differing in nowise from the one delivered except that it included twenty acres more ground, which he did not attach to his answer, and which never was shown in the case. Besides, Campbell's whole answer on its face is the answer of a man reasoning up from his alleged intentions to the conclusion that he could have delivered no plan in any way opposed to such intentions. It was more the expression of his belief than the allegation of a fact.

Mr. Justice TRUNKEY delivered the opinion of the court, November 15th 1880.

By deed acknowledged August 17th 1872, Campbell conveyed the land to Patterson and Reed, " with the right of way over a private road or street, forty feet wide, from the said township road, along outside of the first described four lines of this piece of ground." In October following he conveyed the adjoining lands to Hampton, Routh and others, reserving the right of way before granted over said private road. After these conveyances, he wrote in the deed to Patterson and Reed this addition to the description : " And being section C in a plan of subdivision of part of said larger tract to be hereafter recorded," and gave them the plan. They allege said plan set out divers streets leading from the land conveyed to them through the adjoining lands, subsequently con-

[Campbell *v.* Patterson.]

veyed to Hampton, Routh and others, and said streets were an inducement to their purchase. This the answer positively denies. Upon the issue thus raised the master found for the plaintiff, and was of opinion that the prayer of the bill should be granted.

Reed, one of the grantees, was a minor and became of full age November 5th 1873. Nominally he is not a party, but he and Patterson each filed a deed at same time, for same purpose, to take effect "upon a rescission of the contract under terms of plaintiff's bill." The notes given for purchase-money which became due in 1873, 1874 and 1875 were paid, but those due in 1876 were not paid, and against suits thereon the makers set up defences of fraud and Reed's minority. From the first Patterson paid for Reed and himself, and also paid the taxes. That they had some arrangement respecting the land and payment of the notes is manifest from the testimony of Reed, who had much difficulty in telling about it because of the plaintiff's objections, some of which were very strange. Patterson was neither a minor nor aged and infirm, but of mature and vigorous mind, so that it is not pretended he could have been easily overreached in a bargain. He cared for Reed's interest, and shows no renunciation by Reed for nearly three years after he arrived at majority; nor did he himself, during said time, complain of fraud.

Aside from the testimony of the grantees there is no evidence to impeach the deed. Nobody else knows of such streets as they claim, either on the ground or on a plan. Those who purchased the adjoining lands heard nothing of any streets, save those mentioned in the deed to Patterson and Reed. That description of a private way is persuasive that no other was included in the grant. Naming one excludes others. The land for sale was divided into parcels on the plan—each parcel containing a number of acres— but no piece was subdivided by streets and alleys and into lots, as if for a village. Ample facility was given to reach the township road, and no inference can reasonably be drawn that more was intended than expressed. But it is competent to prove the allegations of the bill and overcome the answer, consistent as it is with the deed; and the inquiry is, whether this has been done by testimony that ought to move a court to decree a rescission.

There is a material difference between circumstances which require a chancellor to forbear and those which require him to act. On a question of specific performance he may choose to be silent; and his action, being of grace and not of right, is to be directed by a sound though legal discretion. But circumstances proper for a rescission, involving as they do the control of a legal right, are necessarily of a more positive and definite cast. The consequence of the distinction is, that though equity would refuse to interfere for purposes of execution whenever it would revoke, it may refuse to revoke when it would decline to execute: Delamater's Estate, 1

[Campbell *v.* Patterson.]

Whart. 362.   In all cases where the cancellation of a contract is sought on the ground of fraud, courts of equity should maintain the principle that no relief be given unless a distinct case of fraud be clearly proved: Story's Eq. Jur., sect. 694 a.   It is an invariable rule in equity that where the defendant, in express terms, negatives the allegations of the bill, and the evidence is only of one person, affirming as a witness what has been so negatived, the court will simply dismiss the bill: Story's Eq. Jur. 1528.   The rule is well settled that there cannot be a decree upon the facts charged in the bill and denied in the answer upon the deposition of a single witness.   There must be two witnesses, or concurring circumstances to supply the place of a second witness, before there can be a decree against the answer: Smith *v.* Brush, 1 Johns. Ch. 459.   The rule was established when a party or interested person could not be a witness.   Then one disinterested witness was not sufficient to authorize a decree against the answer of a party. Now parties and interested persons are competent witnesses, and in many cases it would be easy to call two plaintiffs and fill the letter of the rule, and in all a plaintiff and one other, or a plaintiff and corroborative circumstances, constitute the number.   The spirit of the rule remains, requiring proof of the facts charged and denied to be clear and satisfactory by undoubted evidence of two witnesses, or one witness and the equivalent of a second.   In equity the disputed facts are not settled by a jury, and it is the policy in Pennsylvania, so far as practicable, to conserve the right of trial by jury.   The grantees who charge fraud generally have an ample remedy by action at law, or by defence against an action for the purchase-money, if that has not been paid.   If there be no proof of fraud, except their own testimony; it must be an extraordinary case to warrant a court of equity to set aside the deed.   We think it would be a dangerous precedent to rule that upon the sole testimony of the dissatisfied parties to an executed contract, which had not turned out so well as they had expected, they may of right demand its rescission by a chancellor.

Here the witnesses are the grantees.   If there be corroborative evidence it is overbalanced by the express grant of the right of way.   For considerable time the purchasers were satisfied.   They have remedy by action for damages if the unpaid purchase-money is not enough to cover the injury for the alleged fraud.   We see nothing in the case to justify a conclusion that rescission in a court of equity is the only adequate relief; but, be that as it may, upon the whole case we are satisfied that the fraud charged is not so proved that a chancellor ought to act.   ·

> Decree reversed, and it is now considered and decreed that the bill be dismissed, without prejudice in any action at law, and that the costs, including costs of this appeal, be paid by the appellee.