OCTOBER AND NOVEMBER TERM, 1881, No. 318.

# Egbert *versus* Payne.

1. In a feigned issue to determine the ownership of moneys deposited in bank to the credit of plaintiff eleven years before suit, defendant proved that the deposit slip was in his handwriting, that at the time of the deposit plaintiff was his business agent, that he, defendant, deposited moneys to the credit of plaintiff to be used in defendant's business, and that after this deposit there was a discrepancy in his account with plaintiff of about the amount of the slip which could not be found. Neither party remembered the transaction. The accounts between them had been settled long before. Upon the discovery of the credit, plaintiff wrote to defendant: " The probabilities are that you deposited it to save bringing the moneys home or for some specific purpose and reported to me, and I have forgotten to draw it out." The Court charged, *inter alia:* " If he (defendant) gave it to Payne (plaintiff) for any illegal or improper purpose it would be an executed gift, and he could not take it back." *Held,* there being no evidence of an improper purpose or of gift that this was error.

2. The Court further charged the jury : " Was it deposited for a specific purpose? to wit, in the name of N. H. Payne, to be used in the business of Egbert, or Egbert & Brown, by Payne, as their agent ? If not, then it would seem to

[Egbert *v.* Payne.]

be a gift, in some mysterious way, to this plaintiff. There is no evidence of a specific purpose for which this was deposited, because there is no evidence upon either side, whether for a specific or general purpose." *Held*, that it was error, being a virtual withdrawal of the case from the jury.

3. Defendant asked the Court to charge the jury that if they believed that the defendant deposited the money in dispute to the credit of the plaintiff as the agent of defendant for the purpose of having the money placed to defendant's credit in his account with plaintiff, and the money was never used for the purpose for which it was deposited, or in any other way for the benefit of defendant, then the money belongs to defendant. *Held*, that it ought to have been affirmed without qualification.

ERROR to the Court of Common P eas of *Crawford County.*

Feigned issue, wherein N. H. Payne was plaintiff and M. C. Egbert defendant, to determine to which of said parties a deposit of $1883.12 in the Second National Bank of Titusville belonged.

On the trial in the Court below, before CHURCH, P. J., the following facts appeared:

For some years prior to 1870 M. C. Egbert, the defendant, and the firm of Egbert & Brown, of which he was a member, were extensively engaged in the business of producing and shipping oil. The principal office of the firm was in New York, but they did business along Oil Creek, and at Pittsburgh, and in Philadelphia. N. H. Payne, the plaintiff, as agent for Egbert and Egbert & Brown had almost exclusive charge of their business along Oil Creek. Large sums of money were from time to time deposited by them to his credit in the banks at Titusville and at other places in the oil country, and he drew on them personally as he required money, usually for $5000 at a time. He sent them balance-sheets every month, which were virtual settlements of the accounts, crediting them with the money received and charging them with that expended. There was a final settlement between them in August, 1870. About that time Payne, according to his own testimony, was worth four or five thousand dollars, and had something convertible into money, besides a farm and some interests in wells.

In the fall of 1880 the cashier of the Second National Bank of Titusville called the attention of Payne to the fact that there was a credit on the books of the bank of $1883.12 to P. H. Payne. Upon investigation the following deposit slip upon which the credit had been given was found:

" Deposited in the Second National Bank by N. H. Payne, Titusville, Pa., January 28th, 1870, current, 1883.12."

By mistake it had been entered to the credit of *P.* H. Payne instead of *N.* H. Payne. The slip was in the handwriting of the defendant, Egbert. The cashier testified: " We both concluded then that the writing on the slip was Dr. Egbert's. He (Payne) did not recall the circumstances

[Egbert *v.* Payne.]

under which the deposit was made when I showed him the slip. He did not know anything about it and said it must have been a deposit the doctor had made for him which he had overlooked. I told him there was no question but that the deposit had been intended for N. H. Payne, and we would at once correct it on the books. He then said he supposed he could check against or draw it at any time. I told him that as he had no recollection as to the transaction, and as we both had concluded that the writing on the slip was Dr. Egbert's, that before we paid it, it would perhaps be better to write to Dr. Egbert and see if he had any recollection of it."

Thereupon plaintiff wrote to defendant, and received a reply, which letters were as follows :

"FRANKLIN, PA., October 8th, 1880.

" DR. M. C. EGBERT.

" DEAR SIR: I was at Titusville yesterday; saw G. C. Hyde, of 2d National Bank. He says to me, you have a balance in bank here, which has been here a long time. On investigation I find that there was deposited to the credit of N. H. Payne, January 29th, 1870, $1883.12, which was never drawn out. On reference to the deposit slip I think the N. H. Payne is in your handwriting. I am unable thus far to find my old book of that date to show how it came to be overlooked. *The probabilities are that you deposited it to save bringing the money home, or for some specific purpose, and reported to me, and I have forgotten to draw it out.* One thing, however, is certain, I accounted to Egbert & Brown for all money received from them, so there is no possibility of them having any claim on it. Egbert & Brown's account on their bank books is settled and closed.

" Hyde said no other person could draw this but myself, and he could not refuse my check, but asked as a favor that I would leave it until he was sure there was no mistake about it.

" I wish you would write me stating that any money deposited by you to my credit in their bank was my property.
                " Very respectfully,          N. H. PAYNE.

" P. S.—I see by a memoranda that you left for New York, January 13th, a few days before the deposit, but you had time to have returned before the 29th."

"October 9th, 1880.

" N. H. PAYNE, Franklin, Pa.

" DEAR SIR: Your letter of 8th inst. is received. I am glad to learn of the discovery of the deposit at the First National Bank of Titusville.

[Egbert v. Payne.]

" But I think you will be satisfied, on reflection and a careful examination of the accounts between us, that I am the one entitled to the balance, for it is far more likely under the circumstances then existing, I having a large business and accounts, scattered in various directions, involving large amounts, and dependent on others for the keeping of these accounts, that I would overlook such an item, than that you, whose transactions were smaller and almost wholly personal, would overlook such an amount due to you. Besides this I have quite a distinct recollection that at one time in settling our accounts there was an apparent deficiency of about this sum in the amount which I ought to have, and that the account was settled by me with that apparent disadvantage. You certainly have never had any reason to suppose that I was owing you such an amount as would have been the case, if the amount had been charged to you as a payment from me. But there will be no difficulty in determining to whom this belongs, as the books will show for themselves. If it shall appear to be yours I will cheerfully join in an order for its payment to you, and I will expect you to do the same in my behalf if the facts so require. In the meantime I think it proper that the balance be allowed to remain in bank until we can ascertain the facts, and have written the bank to that effect.                  Respectfully, yours,
                                    " M. C. Egbert."

Neither plaintiff nor defendant had any recollection of the transaction and it did not appear in the accounts.

The defendant testified, *inter alia :*

" 2. Question. Did you ever deposit money to his credit ?

" Answer. Oh, yes.

" Q. For what purpose would you deposit money to his credit ?

" A. Either to be used in my business individually, or in the business of Egbert & Brown ; in either case, if it was used for me, I took credit for it ; if used in the business of Egbert & Brown, I was credited for it, and Egbert & Brown was charged with it.

*        *        *        *        *        *

" Q. I wish you to state what this money was deposited for by you to the credit of Mr. Payne—for what purpose ?

" *Plaintiff's counsel.* That question assumes it was deposited by him for a purpose.

" *By the Court.* Did he deposit $1883.12 to the credit of Payne ?

" *Defendant's counsel.* Q. And for what purpose was it deposited ?

[Egbert *v.* Payne.]

"*Witness.* I can only give my idea of it to the best of my knowledge; I have no doubt in my mind that I deposited that money.

" *Plaintiff's counsel object.*

" *Defendant's counsel.* Q. You need not give the workings of your mind—for what purpose was it?

" *Witness.* It was deposited for the purpose of Mr. Payne using in my business individually, or, possibly to be used in the business of Egbert & Brown; in either case I would have taken credit for it had he got it.

" Q. Have you seen this deposit slip since?

" A. I have.

" Q. Did you deposit the money?

" A. I have no doubt of it.

" Q. I wish you to state if you ever deposited money for Mr. Payne for his own individual purposes?

" A. I never did.

" Q. Or his own individual use?

" A. I never did; I have no knowledge of anything of the kind.

" Q. Were you in debt to Payne at the time?

" A. No, sir, I was not; that is, there may have been a running account at times; he may have paid out some money of Egbert & Brown for M. C. Egbert, or he may have used money of M. C. Egbert for Egbert & Brown.

*          *          *          *          *          *

" Q. I wish, at the time of the settlement with Mr. Payne of your individual accounts with him as agent, the first settlement following this January transaction, what occurred, if there was any money missing belonging to yourself, and what was said about it at the time, between you and Mr. Payne?

" *Witness.* My first individual settlement with Mr. Payne, after this money had been deposited there. My individual account with Mr. Payne was short $2000, or about $2000, as near as I can remember now.

" Q. Explain what you mean by short?

" A. I mean $2000 less in Payne's hands to settle up my expenses than I supposed he had.

" Q. Did you and Mr. Payne make an examination for that deficiency?

" A. We did; we hunted over the accounts, all the forepart of one night, to find where the discrepancy was, and we could not find it."

The plaintiff testified that he sometimes advanced money for Egbert & Brown. On cross-examination he said, *inter alia:*

"Q. Whatever money you received from Dr. Egbert was to be used by you either in his business or in the business of Egbert & Brown, was it not?

"A. Whatever money I received from Dr. Egbert?

"Q. Was to be used either in his business or the business of Egbert & Brown?

"A. I was to put what money was received of them for their benefit.

"Q. Dr. Egbert never gave you $1800 as a present to your knowledge?

"A. No, sir."

Counsel for plaintiff asked the Court to charge:

1. *Prima facie*, a deposit in a bank belongs to him in whose name it is made.

2. It being undisputed that the deposit in the Second National Bank of Titusville, was made in the name of the plaintiff, the defendant would not be entitled to a verdict in this action without distinct and clear proof that the money was his.

3. The fact that the defendant delivered the money to the bank, is not sufficient to overcome the *prima facie* case, in favor of the plaintiff, arising from the fact, that the deposit was made in his name.

4. Statements of a witness, a fact must have been as claimed, because of the existence of other facts, are not evidence and ought to be disregarded by the jury.

Counsel for defendant asked the Court to charge:

"That if they believe that the defendant, M. C. Egbert, deposited the money in dispute to the credit of Payne, the plaintiff, as the agent of Egbert & Brown, or of himself, for the purpose of having the said money placed to his, the defendant's credit, either on the accounts of Egbert & Brown or on his own individual accounts with said plaintiff, and the said money was never used for the purpose for which it was deposited, or in any other way for the benefit of said defendant, then the money belongs to said defendant, and the verdict of the jury should be for him."

The Court charged the jury, *inter alia*:

"If M. C. Egbert deposited it, for his own purpose, for N. H. Payne as the agent, either of himself, or Egbert & Brown, how did he happen to make the deposit of currency of $1883.12? Would it have been natural or reasonable to have made it $2000, $1800, $1900, or $1850—some even sum? He deposited in currency, cash, bank notes, silver, gold and pennies. It took even copper to make this currency, and it seems to have been in currency and not drafts or checks.

"This $1883.12, according to the looks of the paper, ap-

pears as if it had been deposited in currency. He must have been to some trouble, or rather some counting of currency, to have deposited $1883.12. It took some silver, and for the two odd pennies he would have to give copper.

" [Has he explained to your satisfaction that it was his money? If he gave it to N. H. Payne for some purpose, or, if he gave it to N. H. Payne for any illegal or improper purpose, it would be an executed gift and he could not take it back.]

" Defendant's point read:

" Answer. This is affirmed, provided you find the facts as stated there, that the deposited money was never used for the purpose for which it was deposited. Was it deposited for any specific purpose? We are given no account of it. Was it for a specific purpose? It does not seem to be deposited in opening an account, or rather, what a person would call a running account. There does not seem to be any other item to the credit of N. H. Payne, or drawn by him. It just seems to be specifically deposited ; not for the purposes of opening a bank book. A bank book does not seem to have been given to Egbert or Payne. Was it deposited for a specific purpose? to wit, in the name of N. H. Payne, to be used in the business of Egbert, or Egbert & Brown, by Payne, as their agent. If not, then it would seem to be a gift, in some mysterious way, to the plaintiff. There is no evidence of a specific purpose for which this was deposited, because there is no evidence upon either side, whether for a specific or a general purpose. Egbert does not know anything about it, and does not tell you he does. That ' must have been ' whatever Payne says about it, and ' must have been ' whatever Egbert says about it, a verbal argument of both, just as counsel argued upon the subject to-day.

" The legal propositions are as follows:

" Plaintiff's first point read:

" Answer. This is true.

" Plaintiff's second point read:

" Answer. This is a true proposition of law.

" Plaintiff's third point read:

" Answer. This is true.

" Plaintiff's fourth point read:

" Answer. This we say is true, too. In other words, a witness upon the stand must testify to facts. Not evidence of facts, not presumption of facts ; he testifies to the facts, and the jury is to draw the legal inference from the facts. This is the law of the case; the facts we cannot help you on at all."

[Egbert v. Payne.]

October 31st, 1881. Verdict for the plaintiff, upon which judgment was afterward entered.

Defendant took a writ of error, assigning as errors the part of the charge within brackets, the answer to defendant's point, and the answer to plaintiff's fourth point.

*A. B. Richmond & Son* and *J. B. Brawley* for plaintiff in error.

There was no evidence in this cause tending to show that the defendant ever gave any money to plaintiff for an improper purpose. It is error to suggest a fact without evidence: Whitehill *v.* Wilson, 3 P. & W., 405; Sartwell *v.* Wilcox, 8 Harris, 117; Evans *v.* Mengle, 1 Barr, 69; Newbaker *v.* Alricks, 5 Watts, 183; Stouffer *v.* Latshaw, 2 Watts, 165; Musselman *v.* R. R. Co., 2 W. N. C., 105; Greber *v.* Kleckner, 2 Barr, 289.

The case was substantially taken from the jury. There was sufficient evidence that the money was deposited to the credit of Payne, to be used in the business of Egbert, and the question should have been submitted: Neiman *v.* Ward, 1 W. & S., 68.

There was not only no evidence that this deposit was a gift, but both parties testify that it was not: Insurance Co. *v.* Rosenberger, 3 W. N. C., 16.

The answer to plaintiff's fourth point was bad law and bad logic. Improperly admitted evidence should be designated if referred to: Batdorff *v.* Farmers' National Bank, 11 F. Smith, 180.

*C. Heydrick* for defendant in error.

1. Plaintiff had a clear *prima facie* title to the money.

2. Nothing short of clear and distinct proof that the money belonged to the defendant was sufficient to overcome the *prima facie* case made by the plaintiff.

3. The evidence offered by the defendant did not distinctly and clearly show that the money belonged to him: Jackson *v.* Bank of the United States, 10 Barr, 61; Stair *v.* York Nat. Bank, 5 P. F. Smith, 364; Arnold *v.* The Bank, 21 P. F. Smith, 287; Sims *v.* Bond, 5 Barn. & Ad., 389.

There was better evidence that it was a gift than that it belonged to Egbert. The fact that the deposit slip was in Egbert's handwriting was the only evidence that he deposited the money, and there being no clear explanation of the transaction, the jury might have found that it was a gift. If a gift, it would be wholly immaterial whether it was for a legal or illegal, a proper or improper purpose. What the Court in effect say is, that if it was a gift for any purpose

[Egbert *v.* Payne.]

whatever, the giver could not take it back, and this is certainly the law. The witness had no right to state inferences.

The opinion of the Court was delivered, January 2d, 1882, by STERRETT, J.

The single question of fact, involved in this feigned issue, was whether the money deposited in the Second National Bank of Titusville, January 28th, 1870, to the credit of Payne, the plaintiff below, belonged to him or to Egbert, the defendant.

The deposit having been in the name and to the credit of Payne, the money was *prima facie* his, and the burden was thus cast on Egbert of proving that it belonged to himself and not to the plaintiff below. He undertook to do this by proving that the money was deposited by himself, as was shown in the deposit slip in his own handwriting, and by introducing other testimony tending to prove that the deposit was made, not for the individual use and benefit of Payne, but for the purpose of enabling him to use it in the business, either of Egbert himself, or of Egbert & Brown, of which firm Egbert was a member, and for both of which parties Payne was then acting as agent, and that the money having never been applied to the use of either Egbert & Brown or Egbert, still belonged to the latter. A single question of fact solely for the consideration of the jury was thus presented.

There appears to have been no exception to the admission or rejection of testimony, at least none is urged here, but the complaint is that the charge of the Court was calculated to prejudice and mislead the jury. In that portion of the charge which constitutes the first assignment of error the learned judge, referring to Egbert, the defendant below, says: " Has he explained to your satisfaction that it was his money? If he gave it to Payne for some purpose; if he gave it to Payne for any illegal or improper purpose, it would be an executed gift, and he could not take it back." This suggestion of a gift for an illegal or improper purpose was unwarranted by anything that appears in the record, and was calculated to invite the jury to an inquiry in which their only guide was vague suspicion or conjecture. There was no testimony tending to prove a gift either for a proper or an improper purpose. It is scarcely necessary to cite authorities to show that this was error. In Stauffer *v.* Latshaw, 2 Watts, 165, it is said: " To submit a fact destitute of evidence as one that may nevertheless be proved, is an encouragement to err which cannot be too closely observed

or unsparingly corrected." The same general principle is recognized in Sartwell v. Wilcox, 8 Harris, 117; Newbaker v. Alricks, 5 Watts, 183; Whitehill v. Wilson, 3 P. & W., 405. The contention of the defendant below was fairly and clearly presented in his prayer for instructions. The testimony was quite sufficient to justify· the submission of that proposition to the jury, and it should have been affirmed without the qualifications complained of in the second assignment.

Some of the remarks made by the learned judge in that connection were not warranted by the testimony and cannot be regarded as harmless. On the contrary, when considered in connection with the previous suggestion that the money may have been given "for an illegal or improper purpose," they were calculated to mislead the jury, and for aught we know may have had that effect in that portion of the answer covered by the third assignment. The defendant's point was virtually negatived, and the case withdrawn from the jury, by an assumption of fact which the testimony did not justify. Speaking of the money the learned judge says: "Was it deposited for a specific purpose, to wit, to be used in the business of Egbert, or Egbert & Brown, by Payne as. their agent? If not, then it would seem to be a gift, in some mysterious way, to this plaintiff. There is no evidence of a specific purpose for which this was deposited, because there is no evidence upon either side for a specific or general purpose." Being thus instructed that there was no evidence that the money was deposited either for a general or specific purpose, connected with the business of Egbert, or the firm of which he was a member, the jury was necessarily driven to the conclusion that it "was a gift, in some mysterious way," to Payne, as suggested by the Court, or that there was nothing in the case to rebut his *prima facie* right to the money, based on the fact that it was deposited to his credit. In either view the result would be the same,—a verdict in favor of the plaintiff below. The radical error in this part of the answer is in assuming that there was no testimony, for the consideration of the jury, tending to sustain the contention of the defendant below. If such had been the fact, it would have been the duty of the Court to have withdrawn the case from the jury by directing a verdict for the plaintiff, but there was evidence, both direct and circumstantial, which it was the province of the jury to consider, and from which they might, perhaps, have found the facts substantially as embodied in defendant's proposition. The rule is, as stated by the present Chief Justice in Howard Express Company v. Wile, 14 P. F. Smith, 201, "where there is any evi-

dence which alone would justify an inference of the disputed fact, it must go to the jury, however strong or persuasive may be the countervailing proof." Among other items of evidence, tending to sustain defendant's view of the case, is the letter addressed to him, by Payne, in October, 1880, in which the latter, speaking of the deposit, says: " On a reference to the deposit slip, I think the N. H. Payne is in your handwriting. I am unable thus far to find my old book of that date to show how it came to be overlooked. The probability is, that you deposited it to save bringing it home, or for some special purpose, and reported to me, and I have forgotten to draw it."

Other facts and circumstances, which need not be referred to, had a similar leaning, and, on the whole, we are of opinion that the plaintiff in error has just reason to complain of the charge and the manner in which the case was submitted to the jury.

Judgment reversed, and a *venire facias de novo* awarded.