Baldi, Appellant, *v*. Baldi et al.

Argued December 1, 1936.  Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Algernon R. Clapp,* with him *H. C. Roberts,* for appellants.

*John J. McDevitt, Jr.,* with him *Joseph M. Leib* and *John J. McDevitt, III,* for appellee.

OPINION BY MR. JUSTICE LINN, January 25, 1937:

Plaintiff sues for the aggregate of two sums alleged to have been deposited by him—$50,000 on March 22, 1927, and $76,000 on September 19, 1930—with a private banker doing business under the title of First Italian Exchange Bank, Charles C. A. Baldi & Bros. Charles C. A. Baldi, whose executors are among the defendants, died December 28, 1930. This suit was brought in December, 1931, against his executors and two others alleged to have been his partners in conducting the bank. Plaintiff and Baldi, deceased, were brothers.

1. Concerning the $50,000 item, the uncontradicted evidence is that $25,000 was contributed by the plaintiff and $25,000 by Charles C. A. Baldi, the banker. It was a joint deposit. The pass book was issued to "Baldi Virgilio A. or C. C. A." Over three years after the deposit was made, the parties recorded on the signature card the following agreement: "I here the un-

dersigned establish the following conditions—during my life I must receive annually interest at the rate of 4% on this amount of $50,000 after my death the same interest is payable to my brother, C. C. A. Baldi. At the death of my brother C. C. A. Baldi the said sum of $50,000. is payable to the firm C. C. A. Baldi Bros. & Co.                                        Virgilio A. Baldi
                                                "9/19/30

"This is mutually satisfactory
        "C. C. A. Baldi"

C. C. A. Baldi Bros. & Co. referred to in the memo-. randum quoted, was a business corporation in which both the plaintiff and Baldi, the banker, were interested. Both parties contributed equal sums; neither could draw checks against it; the bank agreed to pay plaintiff interest during his lifetime; both agreed that on plaintiff's death the principal should be distributed as stated. Effect will be given to such a contract: compare *Berhalter v. Berhalter*, 315 Pa. 225, 173 A. 172; *Bailey's Estate*, 86 Pa. Superior Ct. 322.

2. Plaintiff had rented a safe deposit box from the bank. He claimed to have had $76,000 of bonds in this box and that they were stolen from it. The bank, acting by Charles C. A. Baldi, assumed responsibility for the bonds. They were never recovered by the bank. The documents and the uncontradicted oral evidence show that the two brothers settled their differences on September 19, 1930, when the memoranda relating to both deposits were signed. On that day, in discharge of its liability to plaintiff for the loss of the bonds, the bank set up an account crediting plaintiff with $76,000. The parties also made the following memorandum in the deposit book: "September 19th, 1930. On recovery of the bonds this deposit is to be returned for the bonds, thereby making this a temporary deposit until the return of the bonds, . . ." This was signed by C. C. A. Baldi and by a clerk acting "for the firm." The plaintiff also wrote in the book, in Italian, a memoran-

dum translated by plaintiff's witness, Virgil B. Baldi, as follows: "I, the undersigned, establish the following conditions: During my lifetime I am to receive four per cent interest on $76,000. After my death $15,000 is payable to my brother Carmine—C. C. A. Baldi—and another $15,000 is payable to my nephew —BY MR. CLAPP: Q. Carmine, son of Vito? A. That is right. It refers to my father. Another $15,000 to my nephew Virgil, son of Carmine, referring to me, and the rest is to be dispensed according to my will. That is signed by my uncle. Q. The plaintiff in this case? A. Yes." That book was retained by the plaintiff. A signature card was also prepared and retained by the bank and on that card the plaintiff wrote the following: "I here the undersigned establish the following conditions—during my lifetime I must receive annually interest at the rate of 4% on this amount of $76,000—after my death $15,000 is payable to my brother, C. C. A. Baldi and another $15,000.00 is payable to my nephew, Virgil B. Baldi, the balance to be dispensed according to my will.

"9/19/30

"Virgilio A. Baldi"

The learned trial judge instructed the jury to find a verdict for the defendants. We all agree that these are not bank deposits in the ordinary sense of the word. There is no dispute about the writings or the circumstances in which the deposits were established; they negative the presumption of the debtor and creditor relation ordinarily existing between banker and depositor: see *Gartner v. Cassatt,* 313 Pa. 491, 169 A. 889; *Com. v. Tradesmen's Trust Co.,* 250 Pa. 383, 386, 95 A. 578.

The $76,000 credit was established upon conditions stated in writing by both parties. As plaintiff's witness testified that "the deposit was not returned for the bonds to the bank," we examine the writings to see what the parties agreed the plaintiff should have if

the bonds were not returned. They agreed he should receive interest at 4% for life; * they did not create a general right in him to demand $76,000 in satisfaction of his claim for lost bonds, but, on the contrary, in addition to interest for his life, they agreed that on plaintiff's death, $15,000 of the principal should come back to C. C. A. Baldi, the banker, and another $15,000 should be paid by the bank to C. C. A. Baldi's son, Virgil B. Baldi; and that the balance should be paid as plaintiff might direct in his will.

On plaintiff's behalf it is argued that his written memoranda are "voluntary"; that he "retains entire control over the fund during his lifetime and provides for the disposition of principal only upon his death. Nothing could be more clearly testamentary in character." The record does not support that conclusion. The parties were settling differences. As part of the settlement, the bank set up the credit upon certain conditions, accepted by and therefore binding upon plaintiff. He agreed what should become of the two sums of $15,000 on his death, he was never to have the disposition of that much of the credit set up; the balance of the account the bank agreed to hold subject to such disposition as he might make by will. He cannot claim the deposit and reject the conditions under which it was obtained.

Having reached this conclusion it is unnecessary to consider whether parties who were made defendants should not have been joined, on the ground that they were not partners in the banking business in 1930. As to the cases relied on by the plaintiff holding that a bank deposit is an account stated raising prima facie liability to the depositor, it is sufficient to say that it may be rebutted and, in this case, was: *Egbert v. Payne,*

---

* We do not pass on the effect, if any, of the Banking Code, 1933, P. L. 624, Article XIII, section 1310 as amended 1935, P. L. 402, section 1, 7 PS section 819-1310.

99 Pa. 239; *Qualters' Estate,* 147 Pa. 124, 23 A. 348; *Harrison v. Watkins,* 112 Pa. Superior Ct. 87, 170 A. 454; *Greenhalgh Co. v. Farmers' National Bank,* 226 Pa. 184, 188, 75 A. 260; *Com. v. Tradesmen's Trust Co.,* 250 Pa. 383, 386, 95 A. 578.

Judgment affirmed.