## BANK OF GROTTOES v. BROWN.

(Circuit Court of Appeals, Fourth Circuit. Oct. 20, 1925.)

No. 2351.

1. **Limitation of actions ⊜16—Under Virginia law, object of action, and not its form, determines applicable period of limitation.**

Under the Virginia law, object of action, and not its form, determines applicable period of limitation.

2. **Abatement and revival ⊜53—Action against bank held ex contractu, notwithstanding declarations sounded in tort.**

Action by safety deposit box renter against bank to recover for loss of contents of box, on theory that bank had not properly protected it from burglars, *held* an action ex contractu, which would survive to an executor or administrator, notwithstanding declaration sounded in tort.

3. **Jury ⊜110(9)—Stipulation agreeing to accept majority verdict held waiver of objection to manner in which jury was drawn.**

Stipulation agreeing to accept majority verdict, made after jury had twice reported inability to agree, *held* waiver of any objection to manner in which jury was drawn.

4. **Warehousemen ⊜45—Care required in safeguarding safety deposit stated.**

Safety deposit box renter, seeking to recover of bank for loss of contents of box, taken by burglars, must prove neglect of bank to take measures to safeguard his property customarily used in community by ordinarily careful institution, fairly comparable in size and other conditions with defendant, which may be done by one witness having knowledge of prevailing usages, or by many witnesses testifying as to usages in different institutions.

5. **Trial ⊜260(7)—Instruction that bank was not liable as insurer of contents of safety deposit box held sufficiently covered by another given.**

Requested instruction that bank was not insurer of contents of safety deposit box *held* sufficiently covered by instruction that bank was not liable unless it failed to use ordinary care.

6. **Warehousemen ⊜47—Requested instructions as to liability for loss of safety deposit held properly denied.**

In action against bank to recover for loss of contents of safety deposit box, requested instructions that bank was not answerable merely because it omitted to take this or that precaution, though abstractly correct, *held* properly denied as misleading.

7. **Appeal and error ⊜1170(9)—Denial of requested instruction in action for loss of contents of safety deposit box held not prejudicial.**

In action against bank for loss of contents of safety deposit box, denial of requested instruction that plaintiff could not recover unless defendant's negligence had contributed approximately (sic) to plaintiff's loss, *held*, under

8 F.(2d)—21

Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), not ground for reversal, in view of evident lack of prejudice.

In Error to the District Court of the United States for the Western District of Virginia, at Harrisonburg; Henry Clay McDowell, Judge.

Action by Hamet Brown against the Bank of Grottoes. Judgment for plaintiff, and defendant brings error. Affirmed.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

George N. Conrad, of Harrisonburg, Va., and George Bryan, of Richmond, Va., for plaintiff in error.

John Paul, of Harrisonburg, Va. (D. W. Earman and Ward Swank, both of Harrisonburg, Va., on the brief), for defendant in error.

ROSE, Circuit Judge. Hamet Brown, is a citizen of New York and he was plaintiff below. He kept some thousands of dollars in coupon Liberty Bonds, as well as some jewelry, in a safe deposit box which he rented from the Bank of Grottoes, plaintiff in error here, and defendant below. For brevity, it will be called the bank, and he the renter.

On June 29, 1921, burglars got into the bank and forced or blew open the doors of its vault. Its own cash and readily convertible assets were kept within the vault in a steel safe. The evidence does not disclose whether there was any attempt to break that open. If there was, it failed. There were also in the vault two sets of safe deposit boxes, differing in the way in which they were secured from unauthorized entry. The boxes themselves seem to have been all alike. They were the familiar oblong sheet metal containers, used in most, if not all, safe deposit vaults. Those of one set, among which the renter's was included, were not otherwise secured than by a separate lock on each box. The boxes were put upon a shelf within the vault. One who was within it could stretch out his hand and remove any one of them he chose. He could take it where he wished, and could open it at leisure with any stone or tool which happened to be available. Most of this class of boxes were opened while in the vault or elsewhere and their contents extracted. The other set, as is usual in safe deposit boxes, were put into separate receptacles, each of which was itself secured by a steel door and lock. Before the box could be reached, this door had to be smashed. When so much was success-

fully accomplished, the box could then be taken out and its own lock forced, or the box itself broken open. There was uncontradicted evidence that after the burglary the appearance of the protective doors of these better guarded boxes indicated that the burglars had attempted to get into them and had failed. According to the testimony, the renter had never been in the vault; his box always being handed to him in the banking room itself. He said that he supposed his box, when in the vault, was in a locked receptacle such as he had often seen in the safe deposit vaults of the cities.

[1, 2] His claim to recover against the bank was founded upon the allegation that it had failed to exercise ordinary care in guarding his valuables. Some 16 months elapsed after the burglary before he brought suit. The bank pleaded a one-year period of limitations, on the theory that his action was not one which, in case of his death, could have been brought by his personal representatives. The learned court below held this plea bad. It was clearly right in treating as immaterial the fact that the declaration was so phrased as to sound in tort. In Virginia, the law is well settled that the object of the action, and not its form, determines the applicable period of limitation. Birmingham v. C. & O. Railroad, 98 Va. 548, 37 S. E. 17; Burk, Pleading and Practice, § 220. The suit might as well have been brought in contract and such a right of action would have survived to an executor or administrator. The tort set up is not one unconnected with contract, nor one which affected the person of the renter only, and not his estate, such as would have been an assault, a libel, a slander, or the like. The learned court below correctly held that the suit was virtually ex contractu, the right of action for which would have survived to an executor or administrator. Lee's Administrator v. Hill, 87 Va. 497, 12 S. E. 1052, 24 Am. St. Rep. 666, cited with approval in Patton v. Brady, 184 U. S. 615, 22 S. Ct. 493, 46 L. Ed. 713.

[3] The bank says the court erred in excluding from service on the jury which tried the case all persons who were directors or stockholders in any bank, as well as all who were renters of safe deposit boxes. The former class was shut out upon a motion of the renter, over the objection of the bank, whereupon the latter asked that no box renter be permitted to serve, and such order was made. We do not find it necessary to consider what merit there might be in this assignment, under circumstances other than those disclosed by this record. The jury, after the case was given to them, twice reported their inability to agree. Apparently, at that time, neither party wanted to be put to the expense and delay of a new trial, and they mutually stipulated to accept a majority verdict. The bank then knew who were on the jury, and the agreement made was clearly a waiver of any objection to the way in which they were originally selected.

[4] The renter, in order to recover, had to prove that the bank had neglected to take the measures to safeguard his property customarily used in that community by ordinarily careful institutions, fairly comparable in size and other conditions with it. For this purpose the renter was entitled to prove the general practice of well-conducted country banks of the neighborhood. He, of course, could not show what this or that particular institution did, and ask the jury to accept its practice as the standard of the care to which the bank was required to conform. Southern Railway Co. v. Mauzy, 98 Va. 692, 37 S. E. 285, and other cases too numerous to mention. On the other hand, it is admitted that, if he had chosen to do so, he might have put on the stand one or many witnesses, each of whom could properly have been allowed to testify, if he could, that he was familiar with the general usage of the banks of the county, and he could tell the jury what that usage was. The renter did neither of these things. He proved what was done by each and every bank in the county of a size and having the resources which made it fairly comparable with the defendant. This he did by a number of witnesses, each of whom testified as to one bank only, but among them they proved the practice of every bank in the county fairly to be considered in defendant's class. The learned judge below held the renter was entitled to show the practice of the banks of the community generally, and it seemed to him that it made no difference whether the evidence was given by one witness, who knew the usages of all of them, or by many witnesses, each of whom proved what a single bank did. We think he was right.

We have considered the other objections made by the bank to the rulings on the evidence. It is sufficient to say we do not find harmful error in any of them.

[5] Some criticism is made of the phrasing of the instructions given. We do not see that it is justified. What was said was in itself correct enough. The jury were told that the bank was not liable unless it failed to use ordinary care for the protection of

the renter's property, and that upon him rested the burden of proving by a preponderance of the evidence that such care was not exercised. Ordinary care was defined as the care which ordinarily prudent persons customarily used under the same, or practically the same, circumstances. The real complaint of the bank, so far as concerns the charge, is that it did not go far enough, in that it failed to tell the jury what the latter needed to know, and what the bank had asked they should be told. Its request that the jury should be instructed that the bank was not an insurer of the renter's property was in substance given when the court told the jury that the bank was not liable unless it had failed to use ordinary care. That clearly negatived any possibility that the bank could be held liable as an insurer.

[6] Nor are we impressed by the contention that the court should have given a series of instructions, specifying that the bank was not answerable merely because it omitted to take this or that precaution mentioned in the pleadings or in the evidence. As an abstract proposition each of these was doubtless in itself sound enough, but, for all that, to have given one or all of them might well have misled the jury. It is perfectly true that there was no specific safeguard that the bank was bound to provide in a sense that its failure to do so would necessarily impose liability upon it. It might omit one or many precautions used by other banks, and still not be answerable, providing the jury thought it had substituted for them something else equally effective. After the jury had heard all the evidence, it was for them to say whether the bank had in fact done as much as an ordinarily prudent institution would have done.

[7] Error is assigned and vigorously argued to the failure of the court to charge the jury that the negligence of the defendant in any event must be such as contributed approximately (sic) to the plaintiff's loss, and that if the jury believed from the evidence, had the defendant employed the best and safest devices and equipment that had been described to the jury, robbers would still have reached the plaintiff's property, they must find for the defendant. Obviously, this instruction should not have been granted in the form in which it was tendered. In the connection in which "approximately" was used, the jury would not have understood the word to mean the same

thing as "proximately." We are not to be understood as suggesting that the court would be justified in refusing a prayer merely because it contained something which the court could see was an obvious clerical error. Such slips are common enough. In the conditions under which trials at nisi prius are necessarily conducted, the most highly trained minds, whether on the bench or at the bar, do not always register with absolute accuracy. Hence the Act of February 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), which requires us to give judgment without regard to clerical errors, defects, or exceptions which do not affect the substantial rights of the parties. Indeed, this enactment is itself an application of the very principle the bank says the jury should have been told to apply in the instant case. It argues that no lack of precaution on its part should cast it in damages, if the renter would have lost its property, even had they been taken, precisely as Congress has told us, we may not set aside the judgment because the court below erred, if that error did not do the bank any harm.

There is really little or nothing in the evidence to which the asked-for instruction was applicable. As already stated, there is no doubt that the burglars had made their way into the vault, and as little that they had not gotten the bank's money out of its safe. There was uncontradicted evidence that they had apparently attempted to effect an entrance into the better secured safe deposit boxes and had failed to do so, and there was no question whatever that they apparently had no such trouble in making their way to the contents of the comparatively unprotected box of the renter and others in like case with him. Moreover, the court had, during the course of the trial, told the jury that their only inquiry was whether the renter's securities were in his box at the time of the burglary and "were they taken by the burglars," and, "if so, was that caused by want of ordinary care on the part of the bank."

In view of all the testimony in the case, and of what the court had previously said, we are convinced that the bank could not have been hurt by the failure of the learned judge to give the instruction for which the bank asked.

Affirmed.

The late Judge WOODS concurred in the affirmance of the judgment below, but died before he passed upon the above opinion.