Bernstein et al. *v.* Northwestern National Bank
In Philadelphia, Appellant.

Argued October 4, 1944. Before KELLER, P. J.,
BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Paul Maloney,* with him *Benjamin O. Frick,* for appellant.

*Abraham L. Freedman,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellees.

OPINION BY HIRT, J., March 5, 1945:

Plaintiffs did not receive credit for $1,692.75 deposited in defendant's "Night Depository". In this action judgment was entered on the verdict in their favor for that amount. Defendant here questions the refusal of judgment in its favor n. o. v. and contends that in any view it is entitled to a new trial.

Defendant bank, on check books which it supplied, invited its customers to use a number of services there advertised, among them "Night Depository Service—24 Hour Deposit Service, 365 Days A Year". The means in this instance was the substantially standard device in common use. Plaintiffs for a nominal charge were given a key to unlock a metal cylinder installed in the outstide wall of the bank building. When unlocked the cylinder could be revolved downward exposing a cavity or slot to receive the deposit. The cylinder locked itself when revolved back to its original position. The slot in the cylinder then was aligned with the upper end of a metal chute into which the deposit dropped and was conveyed by gravity into a locked safe in the basement of the bank. In addition to furnishing a key to the outside cylinder defendant also supplied a small canvas bag, equipped with a lock to be used by a depositor in availing himself of the service.

In the light of the verdict these facts are established: Plaintiffs had an open deposit account with defendant bank; the account was of long standing and they on

occasion had used the device in making deposits. In the afternoon of Christmas Day 1942 plaintiffs placed the receipts of several business days in the canvas bag given them by the bank. There were seven strapped bundles of one dollar bills of fifty each and one check; currency of larger denominations and coin made up the remainder. Plaintiffs' pass book and a deposit slip were also enclosed. At the bank one of them unlocked the cylinder, deposited the bag in the slot, revolved it back to its original locked position and removed the key. Their testimony negatives the possibility that the bag became wedged in the slot of the cylinder from which it might have been appropriated by the next user of the device. Ten days later they found that they had not been credited with the deposit and reported that fact to the bank. A thorough investigation was had. Credit in error was not given to the account of any other depositor and the bank was unable to find plaintiffs' bag or any of its contents and at the trial did not account for the loss. The verdict under sufficient evidence charges the bank with receipt of the deposit by means of the device.

The purpose of the device was to furnish the facilities for making a general deposit. The bank might have, but it did not, enter upon a contract relation with plaintiffs on mutually acceptable terms (9 C. J. S., Banks and Banking, §267; *Burrill v. Dollar Savings Bank*, 92 Pa. 134) defining its liability within legal limits, in the event of loss. In the absence of such limiting agreement the law will imply from the making of the deposit in this case that the relation ultimately intended was that of debtor and creditor. Cf. *Gartner v. Cassatt*, 313 Pa. 491, 169 A. 889; *Statler v. U. S. Sav. & Tr. Co.*, 122 Pa. Superior Ct. 189, 186 A. 290. A general deposit was contemplated by the parties as indicated by the bank in advertising the service and the procedure adopted by it. The mere placing of the money in the mechanical depository however did not result in

a general deposit. The device was no more than the means of initiating such deposit. Delivery by this method was a tender to the bank for that purpose but was a bank deposit only in the making. Some unequivocal act by the bank thereafter was necessary to make it a general deposit and to create the status of debtor and creditor. This relationship cannot result without the consent of both parties to the transaction. *Reicheldifer's Appeal,* 115 Pa. Superior Ct. 454, 176 A. 52; 9 C. J. S., Banks and Banking, §267; 7 Am. Jur., Banks, §442. According to the routine practice of the bank, each morning the safe at the foot of the chute was opened by designated bank tellers, in the absence of those who made the deposits. The contents of the safe was then carried to a tellers' cage and there, as time was available, a teller opened each of the canvas bags and checked the contents against the deposit slip. He then entered such credit in the depositor's pass book as he was entitled to and sent the deposit slip to another department for credit on the books of the bank to the account of the depositor. Nothing further was required of the depositor after placing the deposit in the device, to accomplish this result. The depositor later upon request received his pass book and the canvas bag back from the bank. In the meantime he had no control over his money nor information as to how it was handled or by whom. But any deposit thus made was subject to acceptance by the bank. Errors in amount might be corrected and certain items accepted, if at all, for collection only. The whole deposit might be returned intact by the bank to the customer if made up of unacceptable paper. Similarly we think the depositor for any good reason would be entitled to receive back his deposit in kind if the demand was made before it was commingled with the bank's general funds. Closing of the bank because of insolvency after the deposit was made but before banking hours on the following business day would raise a question of some merit, whether

the depositor would be entitled to a return of his deposit or at least a preference over creditors or other depositors on distribution of the bank's assets if traced into the bank's general fund.

In this case where the bank is charged with having received plaintiffs' deposit, the relationship between them and the bank, in the interval between the receipt of the money and its loss, was one of bailment. All of the circumstances clearly evidence the existence of that temporary relationship. By selling the key to a depositor and inviting him to use the device the bank necessarily assumed the responsibility of a bailee pending the completion of the deposit after it was placed in the device and while it was in the exclusive custody of the bank. And in our view since the purpose of the device and the whole intention of the parties was ultimately to create a general deposit the bailment must be regarded as reciprocally beneficial to both parties. Competition among banks aside from management and financial soundness rests largely upon the quality, variety and kinds of service made available to customers for their convenience. The "Night Depository Service" is one of them. This service is provided not as a gratuity to depositors merely but in the interest of the bank as well, to retain present deposit accounts and to invite new ones. The daily balances of those who use the service augment the bank's general fund available for investment, to the profit of the bank. This was not a gratuitous bailment as appellant contends imposing liability only for gross neglect (Cf. *Scott v. National Bank of Chester Valley*, 72 Pa. 471) but one for mutual benefit raising an issue for the jury whether the bank as bailee exercised ordinary diligence and care. *Wendt v. Sley System Garages*, 124 Pa. Superior Ct. 224, 188 A. 624; *O'Malley v. Penn Athletic Club*, 119 Pa. Superior Ct. 584, 181 A. 370. Defendant therefore may not have judgment n. o. v.

But even so, appellant contends that it is entitled

to a new trial because it was prejudiced by an alleged erroneous statement of the law as to the burden on the defendant in this action. The trial judge charged: "If you find that deposit was made by this plaintiff in that bank on that day then the burden shifts, and the burden is then on the bank to show that under the particular circumstances in this particular case it used ordinary and reasonable care in seeing that that particular deposit was credited to the account of the plaintiff. That is the law as I understand it, and you will apply it to the facts as you find them to be." It is contended that putting the burden on defendant in effect to disprove negligence violates the established rule of evidence applicable to bailments of this class. *Schell v. Miller N. Broad Storage Co.*, 142 Pa. Superior Ct. 293, 16 A. 2d 680 thoroughly discusses the principles on which appellant relies. Cf. *Yeo v. Miller N. Broad Storage Co.*, 146 Pa. Superior Ct. 408, 23 A. 2d 79. In the *Schell* case the rule is thus stated: "When the bailor has proved a bailment, demand, and failure to deliver, it then becomes incumbent upon the bailee *to go forward with proofs* not necessarily showing that he used proper care in handling the bailment but merely showing by clear and satisfactory proof that the goods were lost, and the manner they were lost. When the bailee has furnished such proofs satisfactory to the court and jury and if such proofs do not disclose lack of due care on his part, then the bailor, if he would recover, must prove negligence on the part of the bailee and the bailee's negligence becomes the vital issue." (Italics added).

The charge of the court in the present case was not in conflict with that settled law. The rule of the *Schell* case applies where the loss is conceded by the bailee; it is not applicable or appropriate where as here the defendant denied receipt of the property and maintained that plaintiffs sustained no loss. The verdict established the deposit of plaintiffs' money in the device and its loss while in the exclusive possession of defendant.

Under the circumstances the above instruction of the court in our opinion correctly placed the burden on the bank to show that it used ordinary diligence and care absolving it from the charge of negligence. This is a rule of reason considering the "comparative availability of material evidence" on the subject (*Watkins v. Prudential Ins. Co.*, 315 Pa. 497, 173 A. 644) and is in harmony with the holding of *Woodruff v. Painter & Eldridge*, 150 Pa. 91, 24 A. 621, that " a bailee who fails to give any such explanation of his neglect to restore the property entrusted to him as will enable the bailor to test his good faith ought to be held to proof that he has exercised ordinary diligence in the care of it."

From the defendant's evidence it was a fair inference for the jury that the bank was negligent and there is nothing in the evidence which placed any duty on plaintiffs to individuate the specific acts of the bank which invited the loss. The loss might have resulted from one or a combination of acts charging the bank with lack of due care. The safe at the bottom of the chute was closed off by a panel door from a booth used by safety deposit box customers of the bank. The door was kept locked and there was a second lock on the safe which had to be released before the combination dial could be manipulated. The keys to these two locks were kept in an open drawer in the tellers' cage from which any one inside the bank might take them after banking hours. With the keys one could gain access to the safe and could open it if he knew the combination. Under the practice of the bank, two designated tellers on each occasion went to the safe and together removed the night deposits and carried them to the tellers' cage. The procedure contemplated "double custody" of the deposits. On the morning in question however one teller went alone. He released both locks and opened the safe by means of the combination. He found between 20 and 25 separate deposit bags in the safe and

took them to the tellers' cage. To carry all of them at one time would require some care and skill. Plaintiffs' deposit might have dropped from his arms during the process without his knowledge, either in the booth or elsewhere in the bank where it could have been picked up and appropriated by anyone having access to the place. Other circumstances tend to indicate lack of ordinary diligence and care on the part of the bank.

We have given consideration to the remaining questions raised by appellant but are unable to find merit in any of them

Judgment affirmed.