153 So.2d 599 (1963)
Lurry D. LACOUR
v.
MERCHANTS TRUST AND SAVINGS BANK and Maryland Casualty Company.
No. 1025.
Court of Appeal of Louisiana, Fourth Circuit.
May 6, 1963.
Rehearing Denied June 4, 1963.
Deutsch, Kerrigan & Stiles, A. Morgan Brian, Jr., New Orleans, for defendants-appellants.
Price & Francipane, Roy L. Price, Chester Francipane, Metairie, for plaintiff-appellee.
Before McBRIDE, REGAN and YARRUT, JJ.
YARRUT, Judge.
Plaintiff, a regular depositor of Defendant, Merchants Trust and Savings Bank, sued the Bank and co-Defendant, Maryland Casualty Co., surety on its "Bankers' Blanket Bond," to recover $6,295.87, interest and costs, representing cash and mortgage notes for which the Bank failed to account after Plaintiff deposited the same in the Bank's "night depository," provided by the Bank in connection with its banking facilities.
Judgment was rendered in solido in favor of Plaintiff and against both Defendants *600 in the amount of $6,895.87, with legal interest from judicial demand and all costs.
Both Defendants have appealed. Defendant-Bank will be referred to herein as "the Bank," and its co-Defendant as "the Casualty Co."
The Casualty Co. excepts to Plaintiff's petition contending he has no cause of action whatever against it, as it is not the Bank's public liability insurer, and affords no insurance coverage for tort damages on account of the Bank's negligence; it did not issue any instrument to the Bank which is in any way an insurance policy, but is simply surety on the Bank's own internal indemnity or reimbursement type bond, called a "Bankers' Blanket Bond," issued solely to protect the Bank against stipulated losses, not any third persons not named as privy thereto. Defendant-Bank further contends that the attorney's fee should not have been allowed for the legal proceedings required to cancel the inscription of the mortgages securing such notes.
In Tyler v. Walt, 184 La. 659, 167 So. 182, the court denied recovery to a depositor for a similar direct action against the surety on a like bond, both under the Direct Action Statute, or otherwise. The Direct Action Statute, LSA-R.S. 22:655 (as amended in 1958), limits such actions to tort liability only, not to action resulting from breach of contract, as is this action between a Bank and its depositor. Pennsylvania Fire Insurance Co. v. Underwriters at Lloyd's London, La.App., 140 So.2d 212. Hence, the judgment against the Casualty Co. must be reversed.
On the merits, we find that Plaintiff, an organizer and former member of the Bank's Board of Directors, and a long-time depositor, was provided by the Bank, as was other depositors, with a deposit bag to be used when making deposits in the Bank's night depository. The original bag issued by the Bank when the depository was first installed was three-fourths the size of the last bag issued to Plaintiff, while the depository itself was not increased in size. Prior to the incident in question, the Bank was notified that a depository, similar to the one in question, operated by it at Moisant Airport, had apparently malfunctioned. A check was made by the Bank's employees, yet no report of this malfunction was reported to the depository manufacturer or its service agent, nor any action taken by the Bank to warn its depositors.
A photograph shows the depository to be imbedded in the outer concrete block wall of the Bank, flush with the surface of the wall, and is described as a steel box, the exposed front measuring about 5×5 feet, opening from the top down with the lock and handle at the top, and the hinge near the bottom across the entire front. Immediately under the hinge is a narrow shutter marked "envelopes," clearly indicating that the upper chest is for large packages, and the bottom shutter for small books or envelopes.
On Monday morning following the Saturday deposit, Plaintiff went to the Bank to pick up his deposit bag. He was then advised by the Bank's manager the bag could not be located, and the F.B.I. was called in to make an investigation. The F.B.I. man demonstrated to them that the bag, stuffed as Plaintiff's was, could have stuck in the receptacle wall, thus preventing it from falling into a chute and then into a vault on the inside of the Bank building.
The Bank concedes factually that Plaintiff and his secretary, and his employee Bazile, stand uncontradicted that the cash and mortgage notes were placed inside the bag, the bag locked, and deposited in the Bank's depository.
The Bank's sole contention is that the deposit by Plaintiff's employee was negligent and improper due to the following facts:
The bag was stuffed so full by Plaintiff that he and his secretary had difficulty closing and locking the zipper on it; that this was Bazile's first experience with the night *601 depository; that he was told only how to unlock and open the outside door for access to the receiving tray of the depository, but was given no instruction how to place the bag in that tray; that Bazile was not cautioned by Plaintiff or anyone to be sure to re-open the tray and door, after first closing them, to be sure that the bag had dropped from the tray into the chute and vault; that Bazile admitted he did not reopen and inspect the tray, he simply placed the bag in the tray, closed the outside door, locked it, withdrew the key, and walked away; and that Bazile did not remember hearing any sound, upon closing the tray door, to indicate that the bag did, in fact, drop into the chute and vault. Plaintiff had made deposits in this depository on an average of several times a week since its installation in 1951, without experiencing any difficulty or loss; and for five years after its installation was one of the Bank's directors and chairman of the committee which originally purchased the night depository.
No restrictions or instructions accompanied the use of the night depository, nor was there any notice or warning posted on the depository, nor had the Bank contracted against liability for the loss of any such deposit, nor did Plaintiff assume full responsibility for the loss.
The sole issue is the relationship between the Bank and Plaintiff, its depositor; and whether or not the deposit was complete under the established facts of this case.
For a complete discussion of the relationship in Louisiana between a bank and its depositors see 25 T.L.R. 268, which, inter alia, recites:
"* * * However, as at common law, the Louisiana courts have utilized every opportunity to hold the depositary liable upon special grounds rather than declare the exculpatory contracts invalid. Fidelity & Deposit Co. of Maryland v. Rednour, 44 So.2d 215 (La. App.1950); Marine Ins. Co. [Limited, of London, England] v. Rehm [La.App., 177 So. 79] supra; Williams v. Gallagher Transfer & Storage Co., 170 La 461, 128 So. 277 (1930). In Louisiana the usual relationship of a bank to its `depositor' is that of debtor and creditor. Lacaze v. City Bank & Trust Co., 31 So.2d 891 (La.App.1947); Allen v. Cochran, 160 La. 425, 107 So. 292 [50 A.L.R. 459] (1926); Matthews [Finley & Co.] v. [Their Creditors] McKenzie, 10 La.Ann. 342 (1855). However, if the bank is in the position of a depositary to the depositor, the same duty of preserving the deposit is owed by the bank as by any other depositary. Holmes v. Longstreet State Bank [8 La.App. 514], supra; Levy v. Pike, Brother & Co., 25 La.Ann. 630 (1873). At least one Louisiana case has held that a bank, as a depositary, cannot contract away its liability for negligence. Holmes v. Longstreet State Bank, supra." LSA-C.C. Arts. 2926, 2929, 2938.
Cases from other jurisdictions hold that the Bank is liable in case of a night depository, unless it specifically contracts against its liability, or the depositor expressly assumes the risk; or else the Bank has cautioned its depositor or posted a warning at the depository, as to its proper use. Alford v. United States, 10 Cir., 113 F.2d 885; Bank of Grottoes v. Brown, 4 Cir., 8 F.2d 321; Bernstein v. Northwestern National Bank in Philadelphia, 157 Pa. Super. 73, 41 A.2d 440; Kolt v. Cleveland Trust Company, 89 Ohio App. 347, 93 N. E.2d 788, affirmed 156 Ohio St. 26, 99 N.E. 2d 902; Irish & Swartz Stores v. First National Bank of Eugene, 220 Or. 362, 349 P.2d 814; Annotation, 27 A.L.R.2d 530; Note, 25 T.L.R. 268.
Since the Bank did not contract to exculpate itself from liability, nor did Plaintiff assume sole responsibility therefor; and since no specific warning or notice was given Plaintiff, restricting his use of the depository, Defendant-Bank is liable for the unexplained loss.
*602 Regarding the alternative defense of the Bank that Plaintiff is not entitled to reimbursement for the attorney's fee paid for handling mandamus proceedings required to cancel the mortgage inscriptions, we think the allowance of the fee was proper, as such mandamus proceedings were made necessary only because of the loss of destruction of the mortgage notes, for which loss the Bank is responsible.
For the above and foregoing reasons, the judgment of the District Court is reversed only with respect to Defendant-Maryland Casualty Company, which is dismissed as a Defendant; and the judgment in favor of Plaintiff and against Merchants Trust and Savings Bank is affirmed; Defendant-Bank to pay all costs in both courts.
Judgment reversed in part otherwise affirmed.