The **FIRST NATIONAL BANK IN PLANT CITY**, Plant City, **FLORIDA**, Plaintiff,

and

**William B. Camp, Comptroller of the Currency of the United States, Plaintiff-Intervenor,**

v.

Fred O. **DICKINSON**, Jr., Comptroller of the State of Florida, Ex Officio Commissioner of Banking, Defendant,

and

**The Hillsboro Bank, First Ruskin Bank, and Peoples Bank of Lakeland, Defendant-Intervenors.**

Civ. A. No. 1216.

United States District Court
N. D. Florida,
Tallahassee Division.

May 6, 1967.

---

Robert S. Edwards, Plant City, Fla., for the First National Bank in Plant City, plaintiff.

Robert Bloom, Chief Counsel, Richard S. Beatty, Associate Chief Counsel, Office of the Comptroller of the Currency, Barefoot Sanders, Asst. Atty. Gen., Harland F. Leathers, Lester A. Jensen, Attys., Dept. of Justice, Washington, D. C., Clinton Ashmore, U. S. Atty., Tallahasse, Fla., for William B. Camp, Comptroller of the Currency of the United States, plaintiff-intervenor.

V. Carroll Webb, Associate Counsel, Office of the Comptroller, Earl Faircloth, Atty. Gen., Tallahassee, Fla., for Fred O. Dickinson, Jr., Comptroller, West Palm Beach, Fla., defendant.

Wm. Reece Smith, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for the Hillsboro Bank, First Ruskin Bank and Peoples Bank of Lakeland, defendant-intervenors.

Wm. Joe Sears, Jacksonville, Fla., D. Fred McMullen, Tallahassee, Fla., amicus curiæ.

## MEMORANDUM DECISION

CARSWELL, Chief Judge.

This action was initiated by the First National Bank in Plant City against the Comptroller of the State of Florida in his additional capacity as Commissioner of Banking. The complaint alleged that the State Comptroller had advised the bank that its armored car messenger service for pickup and delivery of cash and other items was a violation of Section 659.06(1) (a) Florida Statutes, F. S.A. which provides that "the business of a bank" shall be transacted only at its banking house. The bank asked the Court to declare that its messenger service was not in violation of Section 659.06 (1) (a); to enjoin the State Comptroller from "interfering with the lawful operations of Plaintiff"; and for various judgments declaring the relationship of state and federal banking officials and banking laws.

In his answer to the complaint the defendant referred to Section 659.06(1) (a) of the Florida Statutes, F.S.A. and to the provisions of the National Bank Act contained at 12 U.S.C. §§ 36 and 81 in support of his position that the bank's activities were unlawful.

Shortly after the federal court proceedings were initiated the State Comptroller filed suit in a state court alleging violation of 659.06(1) (a).

On October 20, 1966 this Court issued its Orders staying proceedings in the State Court and temporarily restraining the State Comptroller from interfering with the plaintiff herein in its conduct of armored car and receptacle services.

Subsequently, three state banks were given leave to intervene permissively as defendants, Brinks, Inc. and the Independent Bankers Associations of Florida and of the United States were permitted to participate as amici curiæ and the United States Comptroller of the Currency was granted leave to intervene as a plaintiff.

Both plaintiffs have now moved for summary judgment, memoranda of law with respect thereto have been filed and considered and the Court has heard argument on the motions in open court. By order of the Court, the two issues of the State Comptroller's authority to regulate national banks and of whether the messenger and receptacle services in question constitute an incidental power which can be properly exercised by a national bank pursuant to 12 U.S.C. § 24 (seventh), although raised by the motions for summary judgment, have been deferred for whatever further consideration may be appropriate.

The record before the Court indicates that the United States Comptroller of the Currency has published in his Manual for National Banks, Ruling 7490 [1] which authorized, with various conditions, the provision by national banks of an armored car messenger service to pick up and deliver monies and other items from and to their customers.

On the basis of the Comptroller's ruling and of various communications from the Comptroller's Office, First National Bank in Plant City, in September of 1966 inaugurated a service whereby an armored car owned by the bank and operated by its employee would pick up cash, checks or other items from customers of the bank for deposit to their accounts at the bank. In addition the messenger would deliver cash to customers upon their request. Furthermore, the bank caused a concrete receptacle to be constructed in a shopping center into which items could be placed for pickup by the bank's messenger.

---

1. 7490. MESSENGER SERVICE

To meet the requirements of its customers, a national bank may provide messenger service by means of an armored car or otherwise, pursuant to an agreement wherein it is specified that the messenger is the agent of the customer rather than of the bank. Deposits collected under this arrangement are not considered as having been received by the bank until they are actually delivered to the teller at the bank's premises. Similarly, a check is considered as having been paid at the bank when the money is handed to the messenger as agent for the customer.

The Comptroller's ruling requires that an agreement be entered into by the bank and its customer using the messenger service providing that the "messenger is the agent of the customer rather than the bank." The record [2] shows that the practice prescribed by the bank and normally followed by its customers was for the customer sending money for deposit to fill out and attach to the items given the messenger or placed in the receptacle a "Messenger Transmittal" which included the following language:

> First National Bank, Plant City, Fla., as messenger and agent for Principal named on front side hereof, agrees to transmit the currency, coin and checks detailed on the front side hereof to the bank's offices at 302 West Haines Street, Plant City, Fla. for deposit to Principal's account. It is agreed and understood by Principal and the bank that in transmitting said currency, coin and checks, the bank is acting solely as agent for said Principal and that the transmittal of said currency, coin and checks, shall not be deemed to be a deposit until delivered into the hands of the bank's tellers at the said banking house.

Furthermore, most of those sending money for deposit and all customers to whom cash was delivered had signed a "Comprehensive Dual Control Contract" which provided that

> As agent for the undersigned depositor, The First National Bank Messenger will transport monies of the depositor to and from the banking house.

When money was delivered to customers it was accompanied by a slip which stated

> Your account has been charged for the TOTAL shown hereon representing monies requisitioned for delivery to you by bank's messenger.

The concrete receptacle bore a legend stating in similar terms that monies placed therein would not be deemed deposited until received at the bank's main banking premises.

On these facts, the defendants argued that the messenger and receptable services, as authorized by the federal Comptroller and conducted by the First National Bank, constitute branch banking in violation of 12 U.S.C. § 36(c) [3] which generally forbids national banks to branch in those states in which branching is forbidden to State chartered banks. In addition, defendants urged that the services in question involve doing the "general banking business" away from the main premises of the bank in violation of 12 U.S.C. § 81.[4]

While acknowledging that the branching Section of the National Bank Act contains, at 12 U.S.C. § 36(f), a description of the term branch:

> The term "branch" as used in this section shall be held to include any branch bank, branch office, branch agency, additional office, or any branch place of business located in any State or Territory of the United States or in

---

2. By the Court's order plaintiff produced the names of 10 percent of its customers for deposition by defendants. Conclusions in this decision with respect to the bank's operations are based on those depositions and on the affidavits submitted by all parties.

3. 12 U.S.C. § 36(c) provides in pertinent part:
   A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: * * * (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication of recognition, and subject to the restrictions as to location imposed by the law of the State on State banks.

4. § 81. Place of business
   The general business of each national banking association shall be transacted in the place specified in its organization certificate and in the branch or branches, if any, established or maintained by it in accordance with the provisions of section 36 of this title.

the District of Columbia at which deposits are received, or checks paid, or money lent;

defendants deny that this section constitutes an exclusive definition and suggest that state law must be considered, as well, in defining a national bank branch. Further, defendants contend that even if one of the three functions enumerated in 12 U.S.C. § 36(f), that is, receiving deposits, paying checks or making loans must be present, before a particular activity may be properly deemed branching, nevertheless the activities in question here involve both receiving deposits and paying checks away from the banking house.

It is argued that no real agency relationship exists between the customer and the messenger in that the bank owns the armored truck, pays the messenger and insures the monies while they are in transit.

Furthermore, defendants contend, facts in the record indicate that from time to time variations from the general procedures occur, such as the failure to use the transmittal slip. These variations, it is argued, disrupt whatever agency relationship may normally exist.

Finally defendants urge that the principle of "competitive equality" governs the relations between National and State banks and that, as Florida state banks may not operate armored car services national banks should not be permitted to do so.

Plaintiffs, on the other hand, take the position that 12 U.S.C. § 36(f) is plainly a definition of the term branch as it applies to a national bank, and argue that unless one of the three functions there described is present the operation is not a branch.

A deposit relationship is one of contract, plaintiffs argue, and the bank and its customers contract, by means of the various forms which accompany cash and other items passing back and forth, that the deposit does not take place until the

funds are received by a teller at the bank's premises and the deposit ends by means of the charge to the customer's account prior to delivery by the messenger.

Plaintiffs further contend that the agency agreement is an additional contractual arrangement to make abundantly clear that, as the monies are being transported by someone acting in the capacity of agent for the customer, they are not legally in the possession of the bank until they reach the bank's premises or after they have been subsequently withdrawn from the bank for redelivery.

As to the Section 81 question the Federal Comptroller and the national bank take the position that this section requires only that the "general business" of a national bank be transacted at its main office and that judicial and administrative interpretation through the years have made it clear that substantial activities, including particularly agency operations, may be conducted away from the main banking house.

Each of the above positions, plaintiffs say, are subscribed to by the Federal Reserve Board[5] and the Federal Deposit Insurance Corporation with respect to the banks under their jurisdiction for various purposes.

Finally plaintiffs urge that the question of competitive equality between the two banking systems comes into play only with respect to the authority to establish branches. If no branch is involved here, there is no requirement that the national bank's practice must conform to that of the state banks.

The issues presented by these motions are complex but the Court is persuaded after consideration of the briefs and argument and the facts in the record that the armored car and receptacle services authorized by the Comptroller and customarily and ordinarily operated by First National Bank in Plant City do not constitute branching or the "general banking business," in violation of 12 U.S. C. § 36 or 81 and that Florida statute

---

5. The Board's ruling on the subject is published at 12 C.F.R. 208.110.

659.06(1) (a), F.S.A. is not operative or controlling in this instance.[6]

■ The definition of branch contained at 12 U.S.C. § 36(f) must be deemed to be the exclusive definition with respect to national banks. Jackson v. First National Bank of Valdosta, 246 F. Supp. 134 (D.C.Ga.1965).

■ To argue that deposits are received or checks paid away from the banking premises is to ignore the plain effect of the deposit and agency contracts entered into by the bank and its customers. "The relation of depositor and banker arises only out of contract, express or implied" 9 C.J.S. Banks and Banking § 267, p. 545. See also McCrory Stores Corporation v. Tunnicliffe, 104 Fla. 683, 140 So. 806 (1932).

Defendants' reliance on the elements of control and employment to show that the messenger is in reality the agent of the bank is misplaced. Such factors cannot alter the import of an unambiguous contract between the parties. What is evidentially created here is a dual agency in which the messenger acts as agent for the customer for certain purposes and for the bank in other respects.

■ The record indicates that the off premises receptacle is used as a storage place for cash and other items until they are picked up by the messenger, an arrangement analogous to night-depositories found at most banks. It is well settled that the placement of funds in such depositories does not create a depositor-depositee relationship but rather one of bailor-bailee. Bernstein v. Northwestern National Bank, 157 Pa.Super. 73, 41 A.2d 440; 10 Am.Jur.2d § 358.

■ Once it is established that the activities in question here do not constitute branching it is not difficult to conclude that they are not "the general banking business" off premises in violation of 12 U.S.C. § 81. The United States Supreme Court has held that

* * * The provision of the act of Congress as to the place of business of the banks created under it must be construed reasonably. The business of every bank, away from its office—frequently large and important—is unavoidably done at the proper place by the cashier in person, or by correspondents or other agents. Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 77 U.S. 604, 650, 651, 19 L.Ed. 1008 (1870).

And in 1911, The Attorney General of the United States, in considering whether national banks had power to establish branches, said

These cases clearly indicate that the courts recognize a vital distinction between a mere agency for the transaction of a particular business and a branch bank wherein is carried on a general banking business.

That such a distinction does exist in fact is obvious.

An agency requires no division of the capital stock, and the details of the business are few and are easily supervised by the officers of the bank, while a branch bank requires, in effect a division of the capital, the working force is organized, and the business conducted as if it were a separate organization, and it competes in all branches of the banking business with other banks in that locality the same as if it were an independent institution. 29 Ops.Atty. Gen. 81 (1911).

■ While not venturing any detailed observations on the question of competitive equality between the national and state banking systems it is clear that once it is established that the activity in question is not a branch within the meaning of federal law there is no occasion for application of state statutes with respect to branching. And defendants, in their pleadings, have not alleged the violation of Florida law in any other respect.

---

6. Defendants' counterclaims also refer to Florida statute 659.52, F.S.A. No explanation as to this allegation has been offered. Furthermore, that section, which deals with banking business by unauthorized *persons*, appears on its face to be inapplicable to the situation presented in this case.

At the hearing on these motions defendants objected to the entry of summary judgment on the ground that a substantial dispute existed with respect to the manner in which First National Bank and its customers were actually implementing the arrangements discussed earlier in this Memorandum Decision. For this reason, it was argued, the matter should be set for trial so that complete evidence could be developed with respect to variations from the facts already established.

In declaring judgment on the issues involved in this partial summary judgment the Court passes only on the propriety of the Comptroller's rulings and the procedures which First National has set up to put the rulings into effect. The fact that in particular instances a customer or one of the bank's employees may have deviated from the authorized and established procedures does not detract from their lawfulness. The record affirmatively shows that the bank has actually carried out its declared intent in the execution of the specific operation to a substantial degree. This is enough to entitle it to a judicial determination of legal efficacy in this declaratory decree action.

This Court does not intend to consider every transaction which has taken place since the messenger service was inaugurated in search of the occasion when the wrong transmittal slip was used or a customer delivered money to the messenger without a clear understanding that his deposit would not take place until the money reached the bank.

For instance, facts are before the Court with respect to an arrangement whereby the bank delivers change to its customers as part of a transaction in which cash or a check in the amount of the change delivered is presented to the messenger for deposit to a special change account not otherwise sufficiently funded. The Court is of the opinion that, at least insofar as such change is delivered in exchange for checks, this practice may amount to cashing checks off the bank's premises and to that extent is not approved by this Court. This may well require a showing of actual accounts being debited at the bank in advance of the service.

However, the Court is convinced from the record before it that the Comptroller's ruling is not in conflict with 12 U.S.C. § 36 or 81 and that at least substantial compliance with that ruling is manifest in the record here.

The Court concludes that there is no genuine issue of material fact and that plaintiffs are entitled to partial summary judgment as a matter of law in accordance with Rule 56, Federal Rules of Civil Procedure.

Accordingly, order to this effect will be entered.