**Phillips Home Furnishing, Inc. v. Continental Bank**

*Astor & Weiss*, for plaintiff.
*Alan C. Gershenson*, for defendant.

HIRSH, J., March 19, 1974.—Plaintiff commenced this action by filing a complaint in assumpsit in which plaintiff alleges that defendant, Continental Bank, refuses to credit plaintiff's account or return funds in the sum of $5,669 which plaintiff allegedly deposited into defendant's night depository safe on June 16, 1973. Thereafter, defendant filed an answer to plaintiff's complaint together with new matter in which defendant avers that the parties entered into a written night depository agreement establishing the rights and responsibilities of the parties with respect to night deposits such as the one which is the subject of the present action. The matter is presently before this court on defendant's motion for summary judgment.

Before this court can grant defendant's motion for summary judgment, it is necessary for the moving party to demonstrate that no genuine issue of a material fact exists and for this court to conclude that the case is so clear and free from doubt that a summary judgment would be appropriate: McFadden v. American Oil Company, 215 Pa. Superior Ct. 44, 257 A. 2d 283 (1969); Ritmanich v. Jonnell Enterprises, Inc., 219 Pa. Superior Ct. 198 280 A. 2d 570 (1971). In the instant case, this court finds the requisite clarity and enters a summary judgment for the following reasons.

Paragraph 4 of the night depository agreement provides as follows:

"Bank shall be under no liability with respect to anything placed in the Night Depository, except for the amount of cash and checks actually taken into its possession upon opening the Night Depository Safe.

In the event of any dispute as to whether or not the said bag dropped down the chute and entered the Night Depository Safe, or came into the possession of Bank, the report of the employee of Bank who shall open the Safe upon the following business day shall be conclusive and binding upon the undersigned."

The issue presented to this court is whether said agreement is legal and binding. If so, plaintiff is bound by the report of defendant's employe, and defendant is conclusively absolved of all liability.

Defendant has submitted the sworn affidavits of Joseph Hearn and Charles Brady, defendant's employes, who affirm that they: (1) inspected the night depository vault on the morning of June 18, 1973, the first banking day after the alleged deposit was made; (2) logged each deposit bag therein; and (3) found no deposit bag belonging to plaintiff. Plaintiff does not dispute defendant's employes' assertion, but urges that the night depository agreement is "illegal, arbitrary and [as a contract of adhesion] contrary to public policy." This court finds, for reasons more fully discussed below, that said agreement is legal and binding, and not against public policy. Accordingly, plaintiff is bound by said agreement's exculpatory clause as well as the affidavits of defendant's employes.

There are only five reported cases dealing directly with the present subject, namely, the liability of a bank where it is claimed that there has been a loss of items placed within the bank, or attempted to be so placed, through the means of a night depository service, generally consisting of a chute leading from an outside opening to a vault or safe, money thus deposited not being credited to the account of the depositor until regular banking hours. The sole related decision in Pennsylvania is Bernstein v. Northwestern National

Bank, 157 Pa. Superior Ct. 73, 41 A. 2d 440 (1945), which is inapposite because it deals with the question of liability in the absence of contract. The court held in Bernstein that the use of a night depository service gives rise to a bailment, only, until such time as the items are officially credited.

In Kolt v. Cleveland Trust Co., 156 Ohio St. 26, 99 N. E. 2d 902, 27 A. L. R. 2d 525 (1951), a sack containing money and checks was placed in a night depository by a regular user of the service, and the bank claimed that it never found the sack or its contents, although the bank employes conducted a search when one of the plaintiffs went to the bank during the first regular banking hours subsequent to the night deposit, for the purpose of opening the sack and depositing the money, this procedure being in accordance with the particular contract the bank required the users of this service to enter upon. The Ohio Supreme Court held that the bank was not liable, in view of a provision of the above-mentioned contract to the effect that the relation of debtor and creditor between the bank and the depositor should not arise out of any use or attempted use of the night depository facilities, and that the use or attempted use of the facilities should be at all times at the sole risk of the depositor. See Annotation, Liability of bank in connection with night depository service, 27 A. L. R. 2d 530. The court noted the right of an ordinary bailee to make a contract exempting him for liability due to his negligence or the negligence of his employes. The court rather persuasively pointed out that although there is a strong tendency to hold such contracts void as against public policy in the case of contracts of bailment for hire entered into by the bailee in the course of a general dealing with the public, bailees of this type, as the term is understood, are persons who make it their princi-

pal business to act as bailees and who deal with the public on a uniform and not an individual basis, as evidenced by the fact that their contracts as a rule are printed on identification tokens or are posted in their place of business—a situation distinguishable from the one under consideration, where there was a written agreement whose terms were known to both parties. The situation is further distinguished from the adhesion contract argument presented by plaintiff in that: (1) the night depository is not a necessity; (2) plaintiff is a business entity capable of bargaining at arms length with defendant; (3) not all banks made such a service available because of the inherent risks; and (4) plaintiff had a choice of alternatives.

As to the issue of public policy, this court is further moved by the conclusion of the Supreme Court of Oregon in upholding the validity of an exculpatory clause in a night depository agreement. The court stated, in the case of Frish & Swartz Stores v. First National Bank, 220 Ore. 362, 349 P. 2d 814 (Ore. (1960):

"Our recognition of the exculpatory clause under the circumstances of this case is in no way inimical to the public interest. The policy favoring the freedom to contract as one pleases should be recognized unless there is some contravening policy which outweights it. We see nothing in the circumstances of the bargain entered into by the parties in the present case which would call for a rule depriving the defendant of the immunity for which it bargained. To apply the rule precluding exoneration by contract in the present case would, in effect, render the defendant defenseless against the dishonest claims of its customers. Until it can be shown that the public need for night depository services is so great that banks should be subjected to almost absolute liability, they should be

permitted to bargain against this exceptional risk of loss": Page 378.

Accordingly, it is, therefore, ordered and decreed that summary judgment is granted to defendant, Continental Bank, and against plaintiff, Phillips Home Furnishings, Inc.