[Civ. No. 43086. First Dist., Div. Three. Feb. 26, 1979.]

ISRAEL VILNER, Plaintiff and Appellant, v.
CROCKER NATIONAL BANK, Defendant and Respondent.

---

## COUNSEL

Rush, Smith & Bionda and Vernon F. Smith for Plaintiff and Appellant.

Severson, Werson, Berke & Melchior, Dennis M. Talbot, Jan T. Chilton and Steven W. Waldo for Defendant and Respondent.

---

## OPINION

**HALVONIK, J.**—Appellant Vilner operates a restaurant in Marin County. In 1970 he entered into a written night depository agreement with respondent Crocker. The agreement included a standard clause exculpating the bank from liability for loss except for losses attributable to gross negligence or willful misconduct.

Appellant regularly used the night depository service of respondent in Novato, normally making drops Sunday evening or before banking hours Monday morning. On Monday, December 17, 1973, appellant went to Crocker's Novato branch between 5:30 and 6 a.m. He unlocked the night depository, placed into a receiving hopper a locked bag containing currency and checks totaling $7,976.36 and closed the depository. He heard a sound, assumed it was the bag dropping into the depository, reopened the hopper and could no longer see his bag. At about 8:45 the next morning three bank employees opened the depository and found nine deposit bags but appellant's bag was not among them.

Prior to December 17, 1973, at least four customers claimed to have made deposits using night depository vaults at other branches of Crocker which were not found by bank employees who opened the depository. On two occasions, the Novato branch was informed by customers that bags had been found lodged in the night depository. Following these claims, the bank took no action; it did not notify the manufacturer, alter its procedures or notify appellant.

The trial court found that Vilner had deposited the money which inexplicably disappeared. It held the clause exculpating the bank from

loss except for gross negligence or willful misconduct not enforceable and also concluded that funds placed in a night depository do not become a bank deposit nor does title to those funds pass until the bank performs some unequivocal act of acceptance. Under the trial court's theory, the relationship of Vilner and Crocker was that of bailor and bailee. The bank, therefore, would be liable only for negligence and, the court further found Crocker had introduced sufficient evidence to establish that it had exercised ordinary care in regard to this inexplicable loss.

We agree with all of the conclusions of the trial court except for the last one. We hold, as a matter of law, that a bailee who fails to redeliver on demand may not dispel the inference of fault until it has explained how the goods came to disappear.

I

### The Exculpatory Clause

■ Vilner's contract with Crocker contained a clause exculpating the bank from loss except for gross negligence or willful misconduct. That clause violated Civil Code section 1668 which provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Despite its broad language, section 1668 does not apply to every contract. In *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441], however, the Supreme Court held unenforceable a clause exculpating a hospital from negligence and listed the following characteristics as indicative of a transaction incompatible with 1668: "It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection

against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." (60 Cal.2d at pp. 98-101, fns. omitted.)[1]

The use of a bank's night depository meets all these criteria. The only point open to argument might be that of "practical necessity" but it seems clear to us that, at least where a restaurant owner who closes his business after banking hours is concerned, the service is a "practical necessity." Moreover, the court in *Tunkl* expressly relied upon and approved decisions invalidating exculpatory clauses in contracts of bailment (*England* v. *Lyon Fireproof Storage Co.* (1928) 94 Cal.App. 562 [271 P. 532]) and where banking practices were at issue. (*Grisinger* v. *Golden State Bank* (1928) 92 Cal.App. 443 [268 P. 425]; *Hiroshima* v. *Bank of Italy* (1926) 78 Cal.App. 362 [248 P. 947]; see also *Akin* v. *Business Title Corp.* (1968) 264 Cal.App.2d 153, 158 [70 Cal.Rptr. 287]; *Real Good Food Store, Inc.* v. *First Nat. Bank of Or.* (1976) 276 Ore. 1057 [557 P.2d 654]; *Gramore Stores, Inc.* v. *Bankers Trust Co.* (1978) 93 Misc.2d 112 [402 N.Y.S.2d 326]; *Phillips Home Furnishings, Inc.* v. *Continental Bank* (1974) 231 Pa.Super. 174 [331 A.2d 840].)

## II

### THE DEBTOR-CREDITOR RELATIONSHIP

■ The placing of the bag containing money into the night depository did not make Crocker a debtor and Vilner a creditor. There was no general deposit but only the use of a device for the purpose of initiating a general deposit on the following day. There was a tender by Vilner but no acceptance by Crocker. Crocker, after all, had not had the opportunity, at

---

[1]The Restatement of Contracts section 575, subdivision (1), pages 1080-1081, contains a comparable rule: "(1) . . . a bargain for exemption from liability for the consequences of negligence is illegal if . . . [¶] (b) one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation." And the Restatement Second of Torts section 496B, comment g, pages 567-568, states: "Where the defendant is a common carrier, an innkeeper, a public warehouseman, a public utility, or is otherwise charged with a duty of public service, and the agreement to assume the risk relates to the defendant's performance of any part of that duty, it is well settled that it will not be given effect. Having undertaken the duty to the public, which includes the obligation of reasonable care, such defendants are not free to rid themselves of their public obligation by contract, or by any other agreement. . . ." (See also Prosser, Law of Torts (4th ed. 1971) § 68, pp. 442-444; 2 Harper & James, The Law of Torts (1956) § 21.6, p. 1186; 15 Williston on Contracts (3d ed. Jaeger 1972) § 1751, pp. 154, 159; and Annot. (1948) 175 A.L.R. 8, 110-113.)

the time of the deposit, even to count the money. (See, generally, Annot., 77 A.L.R.3d 597; *Bernstein* v. *Northwestern Nat. Bank* (1945) 157 Pa.Super. 73 [41 A.2d 440, 441-442].)

The relationship, therefore, was not that of a creditor and debtor but, as Crocker submits, that of bailor and bailee.

## III

### UNEXPLAINED LOSS AND THE BAILEE'S BURDEN

■ "If a bailor alleges and proves the deposit of property with the bailee, a demand therefor, and the failure of the bailee to redeliver, the burden of proof rests upon the bailee to explain his failure." (*Gardner* v. *Jonathan Club* (1950) 35 Cal.2d 343, 348 [217 P.2d 961]; and see *Gordon H. Ball, Inc.* v. *Parreira* (1963) 214 Cal.App.2d 697, 704 [29 Cal.Rptr. 679]; *Morgan* v. *G & N Tank Trucking Co.* (1956) 139 Cal.App.2d 897, 902 [294 P.2d 742]; *Chatterton* v. *Boone* (1947) 81 Cal.App.2d 943, 945 [185 P.2d 610]; *U Drive and Tour, Ltd.* v. *System Auto Parks, Ltd.* (1937) 28 Cal.App.2d Supp. 782, 785 [71 P.2d 354].)

Crocker cheerfully concedes that the burden of explaining the failure to return Vilner's bag rested upon it but insists that the trial court's finding that it exercised ordinary care meets that burden. We do not agree. A simple showing of the exercise of ordinary care is not a sufficient explanation. Something has gone terribly awry. There is no evidence that explains it but, as Thoreau reminds us, "Some circumstantial evidence is very strong, as when you find a trout in the milk." A general showing of prudence and caution will not do absent an explanation of the cause of the disappearance. Where bailed goods have disappeared the bailee is required to "offer evidence to show that the failure to return was due to some specific casualty such as fire or theft. If he merely shows an inability to return he has not met the plaintiff's prima facie case. . . . And it would seem also that the bailee has the burden of [establishing] that the loss through the alleged casualty did in fact occur, before he can claim that the burden of offering evidence as to the bailee's negligence is shifted to the bailor." (Brown, Personal Property (3d ed. 1975) § 11.8, p. 293.)[2]

---

[2]Over a century ago, New York's highest court rejected a bailee's contention that a general showing of care satisfied a bailee's burden for an unexplained disappearance. There it was a trunk that had mysteriously disappeared and the court said: "It is claimed that the failure to produce the trunk, and the charge of negligence is fully met by the evidence produced on the part of the defendants, that the building used for storing baggage was safe and secure and in the charge of trusty agents and servants, and properly guarded night and day. There was no evidence as to how this particular trunk got out of

When a bailee fails to redeliver on demand it must establish that it is without fault. It cannot meet that burden without first explaining how it came to be that it was impossible to redeliver that which was bailed.

The judgment is reversed.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied March 27, 1979, and respondent's petition for a hearing by the Supreme Court was denied April 26, 1979. Clark, J., Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.

---

possession of the Hudson River company. If it had been burned or stolen, without fault on their part, the defendants would not have been liable. The evidence certainly shows a commendable vigilance in the general arrangements to protect this class of property, but it fails to point out how or by what means this trunk was lost." (*Burnell* v. *New York Central R.R. Co.* (1871) 45 N.Y. 184, 189-190; see also *Real Good Food Store, Inc.* v. *First Nat. Bank of Or., supra,* 557 P.2d at p. ·658; *Lacour* v. *Merchants Trust & Savings Bank* (1963 La.App.) 153 So.2d 599; *Bernstein* v. *Northwestern Nat. Bank, supra,* 157 Pa.Super. 73 [41 A.2d 440].)